## CHARLES MOULTON *versus* MARK E. JOSE.

The general rule is, that whenever an officer is guilty of any act, under color of his office, directly affecting the rights of parties not named in his precept, they have a remedy against him; while if he omits the performance of any duty resulting from a precept in his hands, those alone who are parties thereto, or immediately affected thereby, can maintain any action against him therefor.

A surety in a poor debtor's bond has no authority, under the poor debtor act of the Rev. Stat. c. 148, to surrender and deliver his principal into the custody of the jailer, against the will of such principal.

A surety in a poor debtor's bond cannot maintain an action against the officer for neglecting to return the execution whereon the arrest of the principal was made, with the bond, into the clerk's office from which it had issued, within the time prescribed by law.

And it would seem also, that the principal in the bond could not support an action for such neglect.

If a surety in such bond, before the condition had expired, applied to the officer for information as to its date, and the officer stated to him, as the date, a time later than the true one, the surety cannot maintain an action against the officer in consequence of such erroneous statement, unless he knew it to have been false, or made it with an intention to deceive.

It furnishes no ground of exception, if a judge at a trial states what he should do under a certain state of circumstances, but which an alteration of circumstances precludes him from doing.

The granting, or refusing to grant, a new trial by a District Judge, because the verdict is alleged to have been against the evidence, is matter of discretion, and not the subject of exceptions.

EXCEPTIONS from the Western District Court, GOODENOW J. presiding. Case against the defendant, as a deputy sheriff of the county of York.

After all the evidence was before the jury, the purport of which appears sufficiently in the opinion of the Court, the

counsel for the plaintiff requested the Judge to instruct the jury, that he was entitled to their verdict, under the second count, if they believed from the evidence, that the defendant did not return the execution and bond to the clerk's office, and that he gave false information to the plaintiff as to the date and time of expiration of the bond : — and further — requested the Judge to instruct the jury, that if they believed from the evidence, that the affirmation of the defendant, as to the date and expiration of the bond, was made as of his own knowledge, and that it was false, then, even if the defendant did not know whether it was true or false, it would have all the elements, and draw with it all the consequences of a fraudulent representation.

The Judge refused to give such instructions, saying that the facts in the case did not call for them ; and did instruct the jury, that in addition to proof of such neglect of the defendant to return the execution and bond, he must prove, that the defendant made the false affirmation, knowing it to be false, or with an intent to injure and deceive the plaintiff.

The verdict was for the defendant, and the plaintiff filed exceptions, setting forth therein all the testimony given at the trial; and also filed a motion to set aside the verdict as against evidence.

*Codman & Fox*, for the plaintiff, argued in support of these among other positions.

The instruction, that the neglect of the defendant to return the execution and bond to the clerk's office, according to the provisions of the statute, gave no right of action either to the judgment debtor, or to the plaintiff, his surety, was erroneous. The law required a return thereof, not only for the benefit of the creditor, but also of the debtor and his surety. Rev. Stat, c. 148, § 38. The law requires the return of a precept with the doings of the officer; and all persons injured by a neglect so to return, are entitled to their remedy. The provision that the bond shall be returned for the benefit of the creditor, is merely, that he may have the use of it, and does not take away any rights of others. An action may be brought by any one

affected by a false return, or neglect of return, although he may not be a party to the suit. 9 Mass. R. 393 ; 10 Mass. R. 470 ; 7 Greenl. 80 ; *Sexton* v. *Nevers*, 20 Pick. 454 ; *Norton* v. *Valentine*, 15 Maine R. 39.

The instruction given to the jury, that the plaintiff was not entitled to recover, without proving, not only that the defendant made the false affirmation, but that he knew it to be false, or made it with an intention to deceive the plaintiff, was erroneous. *Stone* v. *Denny*, 4 Metc. 151 ; 18 Pick. 95.

*Chisholm*, for the defendant, contended that all the rulings and instructions of the District Judge were correct, and that there was no error in refusing to give the instructions requested.

The action cannot be maintained by virtue of the provisions of Rev. Stat. c. 148, $ 38. That section provides only for the creditor, and as to all others, it is as if no such provision existed.

Independent of statute provisions, the action cannot be maintained.

Although the language of some cases would seem to imply, that one who was injured by such neglect, though neither a party or privy to the process, might maintain a suit against the officer, yet, it is believed, that the officer cannot be liable, either upon authority or principle. The rule will be found to be, that for official neglect, the officer is liable only to the parties to the process wherein the neglect occurred, to wit, the plaintiff and defendant, and to them only. Malfeasance, or positive wrong, including false return, is the only species of official misconduct from which the law presumes an injury can arise to persons other than parties to the process. *Harrington* v. *Ward*, 9 Mass. R. 251 ; *Bank of Rome* v. *Mott*, 17 Wend. 554. The cases cited for the plaintiff, and others cited in those cases, were commented upon, and the conclusion deduced, that they did not conflict with the position taken on the part of the defendant.

The instruction requested was rightly refused. 2 Metc. 99 ; 19 Maine R. 375 ; 22 Maine R. 246.

It was not the duty of the officer to furnish the debtor or his surety with the contents of the bond, or with the time within which performance might be made. He was not a party to it, and they were, and were bound to know these things themselves. The officer was not bound to give such gratuitous information; and if he did do it, and happened to have a wrong recollection of what they ought to know, and which he could not be expected to recollect, he is not liable therefor. The plaintiff should have trusted to his own recollection, and not to that of the defendant.

The opinion of the Court was drawn up by

WHITMAN C. J. — This action is instituted against the defendant for a misfeasance as a deputy sheriff; and for making to the plaintiff a false representation of certain facts, with an intention to deceive, and cause him to be defrauded, he being a surety in a poor debtor's bond, taken by the defendant, upon an arrest of the principal on execution. The complaint against the defendant, as an officer, is, that he did not return the execution, and bond so taken, with a statement of his doings by virtue of the execution, into the clerk's office, from which it had issued, within the time prescribed by law; so that the plaintiff and his principal could see when the time would expire, within which the debtor was bound to disclose, or go into prison, or pay the debt, by reason of which the debtor was prevented from ascertaining the time within which to take measures to save the forfeiture of the penalty of his bond, in consequence of which he failed of so doing.

The misrepresentation alleged is, that the plaintiff and his principal, before the time for performance of the condition of the bond had expired, applied to the defendant for information as to the date of the bond, and that he wilfully stated it to be some days later than it in fact was, whereby they were deceived as to the true time within which the condition of the bond might be performed; which induced the delay of performance, until it had become too late; and, moreover, that he falsely affirmed, that he had duly returned said execution,

when in fact he had not.   By reason of all which the plaintiff had been rendered liable to pay, and had paid a large sum in discharge of the debt due from his principal.

The action comes before us upon exceptions taken to the rulings and opinions of the Judge in the District Court; who there ruled, that the action could not be sustained in favor of this plaintiff, against the defendant, as an officer, for malfeasance in reference to his doings upon the execution ; and not for a misrepresentation, unless it was wilful, and intended to deceive or entrap the plaintiff.   The questions are, were these rulings materially erroneous.   · The cause has been argued quite at length, and with considerable ingenuity.

The gravamen of the plaintiff's complaint is, that he and his principal were wrongfully prevented, by the misconduct of the defendant, from ascertaining the true date of their bond, whereby they were induced to delay the performance of its condition, till it had become too late to do so.   The first question, (and one much dwelt upon by the counsel in argument,) is, has the plaintiff a right to avail himself of the misfeasance of the defendant in not seasonably returning the execution.   In support of the affirmative, the case of *Sexton* v. *Nevers*, 20 Pick. 454, is confidently relied upon.   That was the case of the vendee of an equity of redemption, against the sheriff for defective proceedings in a levy, by reason of which the title in the vendee had failed.   In that case Mr. Justice Morton laid down the law to be, that, for the "breach of these, or other duties in the service of an execution, the officer is answerable to others injuriously affected by his conduct, as well as to the parties to the original judgment :" and instanced the case of other attaching creditors, as decided in *Rich &amp; al.* v. *Bell*, 16 Mass. R. 294, and *Whitaker* v. *Sumner*, 7 Pick. 551, and 9 *ib.* 308.   On the other side, the case of *Harrington* v. *Ward*, 9 Mass. R. 251, is relied upon with equal confidence, as showing that " a sheriff is answerable for his negligence in the service of process, in civil actions, to none but the plaintiff or defendant in such action."   And *The Bank of Rome* v. *Mott*, 17 Wend. 554, is supposed to be to

the same effect. It is there said, that, "before a party can bring an action for negligence, he must show a legal duty to himself;" and that "it is not enough, that, in the careless discharge of duty to one, the sheriff's neglect may glance off, and incidentally and remotely work an injury to another."

To reconcile these authorities it should be observed, that the first has reference to acts directly injurious to others, and the two latter, of neglects not immediately affecting others, and not of positive acts. It may not be going too far to say, that, whenever a sheriff is guilty of any act, under color of his office, directly affecting the rights of parties, not named in his precept, they have a remedy against him; while, if he omits the performance of any duty resulting from a precept in his hands, those alone, who are parties thereto, or immediately affected thereby, can maintain any action against him therefor. The omission complained of in the case at bar is one of non-feasance arising from negligence. The plaintiff was no party to the execution, which the defendant omitted to return. He, however, had signed a bond, which it was the duty of the defendant to return with the execution. But to whom was he answerable for neglecting to return it? By the statute, c. 148, § 38, it is provided that the bond shall be for the benefit of the creditor. How was the plaintiff injured by its not being returned to the clerk's office? His ground is, that he had a right to find it there, in order to afford him an opportunity to inspect it, and ascertain its date. But how was he injured by the want of such inspection? He had no duty to perform by way of saving the penalty. He could not have surrendered his principal, as is supposed by his counsel in argument. The Revised Statutes provide only that the debtor may surrender himself, and go into close jail. *Woodman* v. *Valentine*, 24 Maine R. 551. The plaintiff, therefore, had no direct interest to be subserved by having an opportunity to inspect the bond. The principal, alone, was bound to the performance of any act necessary to save a forfeiture of the penalty of the bond. He alone, then, if either, was entitled to an opportunity to inspect the bond. The plaintiff could, by the want of such

an opportunity, be affected, but contingently and remotely, by the neglect of the defendant in not returning the bond to the clerk's office in due season.

But if the principal were the plaintiff in this action, we are not to be understood as holding, that he could be considered as having any ground of complaint. He had executed the bond with the condition annexed to it. He was to be expected to know what he had done, and especially the liabilities he had assumed. He had six months in which to do and perform one of three several and simple acts, in order to save a forfeiture. It was for him to note the time, and bear it in mind, and conduct accordingly. If a bond be given to perform covenants, is the obligee bound to exhibit it to the obligor for inspection for any purpose subsequently to its execution? Surely not. It might be unkind for the obligee to refuse such an inspection; but clearly the obligor has no right to demand it. The bond in this case was taken for the benefit of the creditor. The officer who took it was under no obligation to the obligors to place it any where, with a view to afford them an opportunity to inspect it.

As to the other branch of the plaintiff's ground of claim against the defendant, viz. — the false representation, it seems to be clear, from what has already been observed, that the plaintiff has no cause of complaint on account of what the defendant said in reference to the return of the execution and bond into the clerk's office. If the plaintiff has sustained any injury under this head it is from the defendant's misstating the true date of the bond, and thereby inducing the principal in the bond to delay performance of its condition till the time of performance had elapsed. But, if he and his principal had knowledge of the true date of the bond, and were bound to bear it in mind, it may be questionable, at least, whether they can with propriety complain of having been deceived in regard to it. The plaintiff, especially, having nothing to do, personally, with the performance of the condition of the bond, can scarcely be deemed to have a right to complain of having been deceived with regard to the time within which the condition

was to be performed. There would not seem to have been any privity of contract or obligation between him and the defendant. The plaintiff was but a surety for his principal; between him and whom, there was, at least, an implied contract that the principal should indemnify and save him harmless. The privity of contract and obligation was between them two. It is believed it would be really a novelty for the plaintiff to be allowed to sustain this action under such circumstances.

But the action was not put upon this ground in the Court below; we will therefore leave it, and proceed to an examination of the ruling of the Judge, to which the exception was taken, on the subject of misrepresentations. There was no question as to the fact, that the defendant did state to the plaintiff, that the date of the bond was the thirteenth, instead of *the eleventh* of the month; and that the plaintiff's principal was thereupon induced to delay performance of the condition of his bond till it was too late; and that the plaintiff, his surety, was thereupon compelled to pay a portion of the debt to the creditor. And the plaintiff contended, that the defendant's statement was positive, and as of his own knowledge, when he knew it to be untrue; and, therefore, that the judge should have directed the jury to find against him; but the judge ruled, that the defendant was not responsible, unless the misrepresentation was wilful, and with an intention to deceive the plaintiff. The question is, was this correct.

The plaintiff in support of his position relies with great confidence, upon the case of *Stone* v. *Denny*, 4 Metc. 151, and cases there referred to. That case contains an elaborate review of the authorities on the subject of false representations. But the conclusion to which the Court came in that case is scarcely in accordance with the position taken by the plaintiff here. Mr. Justice Dewey, who delivered the opinion of the Court, says, that he " had supposed it to have been settled, by a long course of decisions, that such actions could only be maintained, when the false representation has been intentional;" the party making it " either knowing it to be false, or what would be equally fraudulent in law, knowing

·that he was affirming as to the existence of a fact, about which he was in entire ignorance." Whether the defendant made the assertion complained of in this case, knowing it to be false, or without good reason for supposing that he knew the fact to be as stated, are necessarily questions for the consideration of the jury. If they could find that he knew it to be false, or that he knew he had no knowledge about it, their verdict should be against him. In commenting on the case of *Page* v. *Bent*, 2 Metc. 371, the learned Judge, in the case above cited, clearly intimates an opinion, that, to render a defendant liable, intentional wrong must be clearly seen to exist. And he does the same in commenting upon the case of *Lobdell* v. *Baker*, 1 Metc. 193. The affirmation of a fact as true of his own knowledge, when the affirmant knew it to be false, or had no reason to suppose that he had any knowledge about it, would be plenary evidence of an evil design. But if it should appear that he had such reasons for supposing the fact to be as stated by him, and that he had knowledge as to the existence of it, and that the assertion, though false, was the result of an innocent mistake, there would be no intentional wrong done, and of course no good cause of action afforded. It was for the jury, in this instance, to ascertain how the facts were in each of these particulars, and they seem to have found, that the defendant was free from any intentional wrong. They considered, doubtless, that it did not appear, that the defendant had been instigated by any motive of interest or prejudice to give erroneous information ; that he did not assert the fact to be as stated by him, otherwise than as he found it so entered on his minute book, in which the entry, without any sinister design, might have been made through mistake ; and that he might well suppose he knew how the fact was, though he was under a mistake in regard to it. The defendant produced his book, alleging it to be the one to which he referred, when he made the false representation ; and by consent of the plaintiff it was suffered to go to the jury ; and there was evidence tending to identify it as the book to which the defendant recurred to enable him to state the date of the bond ; and no question

was made but that it was entered there as of the thirteenth, instead of the eleventh of the month. This also might well tend to satisfy the jury, that his assertion as to that fact, was from sheer mistake. The instructions, therefore, in the terms proposed could not with propriety have been given; and the instruction given was not materially erroneous.

Another ground of exception is, that, when the defendant produced and offered in evidence his book, though it was ruled out by the Judge, yet, that the Judge ruled, " that the defendant's counsel would have a right to argue to the jury upon its being objected to and rejected." If the plaintiff meant to insist upon this objection, by way of exception to the ruling of the Court, he should not have, subsequently, permitted the book to go to the jury. The Judge had only said what he should permit, if the book were not admitted. The book being admitted he ceased to have occasion to permit any comment upon its exclusion. He did not therefore do that, which, if he had done, the plaintiff supposes might have been a ground of exception. But we think it very clear, that we cannot sustain exceptions to what a Judge may say he should do, under a certain state of circumstances, but which an alteration of the circumstances precluded him from doing.

It is not understood, that the question, whether the refusal in the Court below to grant a new trial was wrong or not, although embraced in the exceptions, is now intended to be insisted upon. It is undoubtedly very clear, that we could not revise its decision in that particular. The granting of new trials at common law is matter of discretion, and not subject to exceptions.

*Exceptions overruled;*
*Judgment on the verdict.*