## THE STATE OF KANSAS V. DANIEL A. INGRAM.

1. NOLLE PROSEQUI — *When no Bar to a Second Action.* A *nolle prosequi* of a criminal prosecution entered before the commencement of a trial is no bar to a subsequent prosecution for the same offense.

2. FORMER ACQUITTAL; *Plea of.* A plea to an indictment of *autrefois acquit*, which simply alleges a *nolle prosequi*, is bad, and a demurrer to it should be sustained.

3. ———— Where a demurrer to such a plea is however overruled, and then a denial filed, and the court on the trial of such plea refuses to call a jury, but hears the testimony and decides against the plea, and the testimony only shows a *nolle prosequi* before trial, *held,* that the substantial rights of the defendant were not prejudiced.

4. EVIDENCE — *When Objection to be Made.* Where testimony is admitted without objection, it is too late to insist for the first time in this court that it was admitted without first laying the proper foundation therefor.

5. ADMISSIONS OF DEFENDANT; *When Admissible.* It is not error to admit in evidence the admissions and confessions of the defendant, although made after his arrest, and while in custody, and although at the time a crowd of persons was surrounding the building in which he was confined, provided it appears that such confessions and admissions were made without, and were uninfluenced by, any threats, promises, or other inducements.

6. LARCENY; *Evidence of Identity of Property; Competency.* On the trial of a prosecution for the larceny of a horse, which rests largely upon circumstantial evidence, it is not error to admit the evidence of certain witnesses who testify to seeing the defendant, recently after the larceny, in the possession of a horse, without fully identifying it as the horse that was stolen. The weight of such testimony is matter for the consideration of the jury.

7. INSTRUCTIONS; *Circumstantial Evidence.* Where the court, at the instance of the state, instructs the jury as to the right to convict upon circumstantial testimony, and thereafter gives all the instructions asked by the defendant in respect to such evidence, the latter has no cause of complaint that the first instructions failed to give any rules for weighing and determining the effect of circumstantial testimony, or to suggest the need of extra caution respecting such testimony.

8. ———— *Prima Facie Case; Presumption.* Where upon the whole testimony the state has made out a *prima facie* case, that is, has proven such a state of facts, as, unexplained, point to the defendant's guilt, and no explanations have been made, the jury is warranted in finding a verdict of guilty. The mere presumption of innocence does not overthrow the presumption from the unexplained facts.

9. WEIGHT OF EVIDENCE; *Statements of Accused; Province of Jury.* The jury is not bound to believe all the statements made by the defendant in explanation of his possession of recently stolen property, those in favor of as well as those against him, even though there is no direct evidence showing the falsity of the former. They are to consider all the statements, and give to each such credence as to them seems reasonable and just under all the circumstances of the case.

10. INSTRUCTIONS — *When no Error to Refuse.* An instruction which, though correct as an abstract proposition, seems likely without some explanation or qualification to mislead the jury, may properly be refused.

### *Appeal from Nemaha District Court.*

INDICTMENT for grand larceny, found at the August Term 1875, charging that the defendant, at the county of Washington, "on the 8th of June, 1871, one bay gelding, four years old, about fourteen and one-half hands high, of the goods and chattels of one M. S., unlawfully and feloniously did steal, take and carry away," etc. The indictment also alleged that the defendant was absent from the state, and so concealed himself that he could not be found, from September 15th 1871, to June 14th 1875. A plea of former acquittal was filed. The record shows (and see 10 Kas. 630,) that defendant had been arrested in July 1871 upon a warrant issued by a justice of the peace, and had been recognized by the justice for his appearance at the October Term 1871 of the district court; that at said term an information was filed by the county-attorney, but defendant failed to appear, and that at the April Term 1874, the county-attorney entered a *nolle,* the defendant being still absent, and still failing to appear. The proceedings taken on said plea of former acquittal are fully stated in the opinion. Subsequently defendant pleaded "not guilty," to the indictment, and a trial was had at the August Term 1875. Verdict, guilty, and defendant was sentenced to the state prison for the term of three years. From this sentence and judgment he appeals.

*J. G. Lowe,* and *Joseph Sharp,* for appellant.

*J. W. Rector,* county-attorney, for The State.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted in the district court of the crime of grand larceny. From that conviction he brings this appeal. Several questions are presented and discussed by counsel for appellant.

I. A plea of *autrefois acquit*, was made, and it is alleged that the court erred in refusing to submit the issue tendered thereby to a jury. A demurrer to this plea was first filed by the county-attorney, which was overruled. He then filed a denial of the plea, and upon that issue the court, after refusing to call a jury, heard testimony and decided against the defendant. We think the court should have sustained the demurrer, that the plea, as filed, showed no case of *autrefois acquit*, and that therefore there was no question of fact to be submitted to any triers. The plea, after alleging a prior information for the same offense, states:

"And the said defendant further alleges that at the said April Term 1874 of the said district court, * * * the said district court, by its order and judgment, upon the motion of J. W. Rector, county-attorney for said Washington county, and prosecuting said information in behalf of the said state of Kansas, dismissed and forever discharged the said defendant from prosecution on said charge of feloniously stealing," etc.

This shows no trial, no impanneling of a jury, no proceeding other than the filing of an information, and a *nolle prosequi*. It does not appear that the defendant was ever acquitted, was ever in jeopardy. A *nolle prosequi*, prior to the impanneling of a jury, is no bar to a subsequent prosecution. 1 Archbold Cr. Pr., (Waterman's Notes,) p. 368, and cases cited; 1 Wharton's Cr. Law, 7 ed., p. 544, and cases cited in note. So that the court should have sustained the demurrer to the plea; and any subsequent proceedings thereon, even though they were irregular, wrought no prejudice to the substantial rights of the defendant. It may be stated that the testimony subsequently offered on the trial of the plea showed just what the plea alleged, a *nolle prosequi*, and nothing more.

II. It is claimed that the court erred in admitting the testimony of the prosecuting witness, and of the sheriff, as to admissions made by the defendant. So far as the testimony of the sheriff is concerned, it was admitted without objection, and it is too late now to object that no proper foundation therefor was laid. As respects the testimony of the prosecuting witness, while it appears that the defendant was in custody, that quite a crowd was collected in front of the building where the defendant then was, and that one at least of the crowd was threatening mob violence, it does not appear that any of these threats were heard by the prisoner, and it does appear that no inducements, promises, or threats of any kind whatever were made to defendant, or that anything was done or said to influence him to make the statements he did make. Under these circumstances there was no error in admitting the testimony. *The State v. Reddick*, 7 Kas. 143.

III. It is insisted that the testimony of one or more of the witnesses who saw defendant in company with another man, shortly after the larceny, in possession of some horses, did not sufficiently identify such horses as the ones that were stolen. But this is an objection going, not to the competency of the testimony, but to its weight, and was a matter for the consideration of the jury. The simple fact, if that was all, that the defendant was seen in possession of horses shortly after the larceny, even without any identification of the animals, was a fact which the court might properly admit in evidence, leaving the effect of it to be considered by the jury under proper instructions.

IV. The remaining objections are to the instructions. Of these, three were given at the instance of the state, two as asked by defendant, and two asked by defendant with some modification, though in what the modification consisted, does not appear. The court, in addition, gave a general charge. Five instructions asked by defendant were refused. The three instructions given at the instance of the state, counsel for appellant claims to be erroneous, but fails to point out any specific error in either. He quotes from Roscoe's Cr. Evidence, that "The utmost caution should be used in the

application of circumstantial evidence," and also says that "in criminal cases the establishment of a *prima facie* case only does not take away the presumption of the innocence of the defendant, nor shift the burden of proof." This is the only specification of error. And, so far as this goes, we see nothing of which defendant can rightfully complain. True, the instruction bearing upon circumstantial evidence is brief, and in general terms, suggesting no need of extra caution, and giving no rules for weighing and determining such evidence. But it is unquestionably correct as far as it goes, and the court afterward, and at the instance of defendant, enlarged upon this matter, and gave all the instructions thereon asked by defendant. In reference to the other suggestion of the learned counsel, while it may be true that in the progress of the trial the *onus probandi* is not shifting backward and forward, and that the state must upon the whole testimony establish its case, yet if, upon the whole testimony, the state has established a *prima facie* case, that is, has proven such a state of facts as, unexplained, point to the defendant's guilt, and no explanations have been made, the jury is warranted in finding a verdict of guilty. The mere presumption of innocence does not overthrow the presumptions from the unexplained facts. We do not think the instructions inconsistent with these views.

The instructions refused were properly refused. Two of them were to the effect that, unless the state had shown the statements of defendant concerning his connection with the property to be false, they must acquit. We do not suppose the court was bound to single out a single matter, such as the truth or falsity of defendant's statements, and direct the jury as matter of law that the verdict should hinge thereon. The jury were to consider all the testimony, the manner of the larceny, the conduct as well as the statements of defendant, and from them all determine the question of guilt.

A third instruction refused was, that the jury must believe all the statements of defendant, those in his favor as well as those against him, unless the state had shown by the evidence that the former were false. This would be apt to mislead the

jury, and induce the belief that there must be some direct testimony showing the falsity of defendant's statements, or else that they must be accepted as true. It would be invading the province of the jury, for they are to determine how much credence shall be given to each and all of the statements of defendant. Some may seem to them so improbable that, though there be no direct testimony showing their falsity, they may properly disbelieve them.

The fifth instruction refused was to the effect that if the proof showed the larceny of a horse, the jury must acquit, inasmuch as the indictment charged the larceny of a gelding. We think there was no error in refusing this instruction in the unqualified condition in which it was asked. Our statute, it is true, specifically mentions "horse, mare, gelding, colt," etc.; and the indictment charged the larceny of a gelding. But still, in common talk, the terms, "horse" and "gelding" are used interchangeably. The first question asked the prosecuting witness was, "Did you have a bay gelding stolen about the 1st of June 1871?" And the answer was, "I did." Subsequently he spoke of the animal as a "horse," as did the other witnesses. Now it seems to us, that an instruction which might seem to the jury to compel them to give to the word "horse," as used by the witnesses, an arbitrary technical meaning, instead of its common signification, might mislead them. We do not mean to hold, under our statute, that proof of the larceny of a stallion will sustain an indictment charging the larceny of a gelding. But where an instruction attempting to distinguish between the two classes of animals, and, using the terms "horse" and "gelding," ignores the fact that in common parlance the terms are used interchangeably, and seems calculated to compel the jury to give to the term "horse," as used by the various witnesses, a signification not intended by them, the court may properly refuse it. For an instruction, however correct, should not be given if, without qualification, it is likely to mislead.

Upon all the points therefore made by counsel for appellant, we think the ruling of the court must be sustained, and the judgment will be affirmed.

All the Justices concurring.