[No. 1128, February 27, 1907.]

THE TERRITORY OF NEW MEXICO, Appellee, v. ROSARIO EMILIO, Appellant.

### SYLLABUS.

1. Comp. Laws 1897, Sec. 2881, authorizing a change of venue in a criminal case for local prejudice, is not mandatory, but the court on a showing being made in the statutory form has power to inquire into the knowledge or disinterestedness of the supporting witnesses, and deny the application if found to be unsustainable in fact.

2. Comp. Laws 1897, Sec. 2897, authorizing the denial of an application for a continuance for absence of a witness, if the other party will admit that the absent witness, if present, will testify as alleged in the application for continuance, applies to criminal as well as civil cases.

3. Accused was indicted April 11, 1905, for homicide alleged to have been committed on April 3d, and was put on trial May 1, 1905. Defendant was charged with murder

by shooting, and his only defense was that deceased committed suicide. He admitted his presence at the scene, and testified to the details of the alleged suicide,. and, so far as appeared, every person who could throw any light on the facts testified. Held, that defendant was not prejudiced by the denial of his application for a continuance to allow him more time to prepare for trial.

4. Laws 1903, p. 218, c. 112, Sec. 1, provides that every jury commissioner shall be disqualified to select jurors for two successive terms of court. By Laws 1903, p. 175, c. 71, Sec. 3, the regular terms of the District Court of Lincoln county were fixed to be held on the first Monday of March and September in each year, but by Laws 1905, p. 204, c. 89, Sec. 1, the time of holding such terms was changed to the second Monday of April and October, so that there was no term of such court in March, 1905. Held, that the fact that commissioners who selected the jury for the April, 1905, term at which accused was tried and convicted, were also the commissioners who would have selected jurors for the preceding March term, had one been held, did not disqualify them to select jurors for such April term.

5. Accused, when ordered by a deputy sheriff and his posse to surrender, refused, and after he had been fired upon submitted to arrest, when he stated that he had killed deceased. From the point of the arrest he was taken to near the body of deceased, when he was asked if that was the body of the woman he had killed, to which he replied in the affirmative, and that, if he had not recognized witness by his voice, none of the posse would have got him. Held, that whatever violence attended defendant's arrest was the result of his own resistance, and that his confession, not having been otherwise induced by threats, fear, or promise, was admissible.

6. Where a diagram made by a witness offered as illustrating his testimony was shown to be correct on his cross-examination, it was properly exhibited to the jury.

7. Where the court sufficiently charged the law with reference to confessions in a criminal case, it was not error to refuse to give a request to charge on such subject asked by defendant.

8. Where accused applied for a new trial for alleged dis-

qualification of a juror, defendant's affidavit that he first learned of such disqualification after verdict was insufficient to show diligence, without an affidavit of his counsel showing a similar lack of knowledge on their part.

9. An application for a new trial of a criminal case, so far as it relates to the disqualification of a juror, is addressed to the sound legal discretion of the trial court whose action is not reviewable.

10. Where a juror had an opinion as to defendant's guilt which he had formed from public rumor as to what the facts in the case purported to be, but he unequivocally stated that he could and would lay aside his opinion and try defendant impartially on the evidence, he was a competent juror.

11. Where accused was clearly guilty of murdering deceased, it being impossible for her to have committed suicide as he alleged as his only defense, and, on being arrested without being informed as to the cause thereof, he commenced to talk and said he had killed a woman, and later, in view of deceased's body, stated that she was the woman, he was not entitled to a new trial for alleged prejudice of a juror.

Appeal from the District Court for Lincoln County before EDWARD A. MANN, Associate Justice. Affirmed.

GEORGE B. BARBER and R. P. BARNES, for Appellant.

When an applicant for change of venue brings himself within the provisions of the statute, it is mandatory upon the court to change the venue of the cause. Compiled Laws, section 2881; Territory v. Kelly, 2 N. M. 292; Territory v. Leary, 8 N. M. 180; State v. Goddard, 146 Mo. 170, 48 S. W. 82, citing Higgins v. Com. 94 Ky.; Birdsong v. State, 47 Ala. 74; People v. Yoakum, 53 Cal. 566.

It is reversible error to refuse a continuance upon a proper showing when sufficient time to prepare for defense, is not given. State v. Dakin, 52 Iowa, 395, 3 N. W. 411; State v. Lewis, 74 Mo. 222; State v. Nash, 7 Iowa 347; Metts v. State, 29 Ga. 271; People v. Diatz, 6 Calif. 250; Van Meter et al v. People, 60 Ill. 168; Powers v.

State, 80 Ind. 77; Abbot's Criminal Trial Brief 167 and 171.

Laws of 1903, Chapter 112, section 1, page 218, disqualifies every jury commissioner from selecting jurors for two successive terms of court.

When a confession by the accused is offered in evidence against him, the burden is on the prosecution to show that it was voluntary, before it can be received in evidence. Coffee v. State, 25 Fla. 501, 6 S. R. 493; Clayton v. State, 31 Texas, Crim. R. 489, 21 S. W. 255; Hite v. Com., 96 Va. 489, 31 S. E. 895; State v. Auguste, 50 La., 23 S. R. 612; State v. Garvey, 26 Am. R. 123; Amos v. State, 83 Ala. 1, 3 S. R. 749; Nicholson v. State, 38 Md. 140; People v. Soto, 49 Cal. 67; McAlphine v. State, 117 Ala. 93, 23 S. R. 130.

The introduction in evidence of a diagram must be preceded by proof of its correctness. Wharton's Crim. Ev., sec. 546, p. 476; Underhill's Crim. Ev. Sec. 52, p. 64; Fuller v. State, 117 Ala. 36, 23 S. R. 688.

It is error to reject instructions sound in law and applicable to the evidence. People v. Strybe (Cal.) 36 Pac. 3; Crawford v. State, Texas Crim. App., 34 S. W. 927; Brooks v. State, 96 Ga. 353, 23 S. E. 413; State v. Thompson, La., 13 S. Rep. 392; People v. Seaman, Mich., 65 N. W. 203; State v. McCann, Wash., 47 Pac. 443, 49 Pac. 216; Hayes v. State, Texas Crim. App., 39 S. W. 106.

The law requires that jurors should be not liable to an objection of malice, ill will, hatred, revenge, prejudgment or the like. Monroe v. State, 5 Geo. Rep. 85; State v. Hopkins, 1 Bay's Rep. 372; State v. Bussick, 19 Ohio Rep. 198; Sellers v. The People, Ill., 3 Scammon 412; Com. v. Buzzell, Mass. 16 P. R. 153; Cody v. State, Miss. Rep. 27; Sturdley v. Hall, 22 Maine R. 198; Moses v. State, 10 Humph. Tenn. Rep. 456; 2 Graham & Waterman on New Trials, pages 382 to 421.

W. C. REID, Attorney General, for Appellee.

The court is given a discretion as to whether or not the witnesses corroborating the affidavit made in support

of the motion for a change of venue are disinterested witnesses under the statute. Territory v. Gonzales, 68 Pac. 925; Territory v. Vialpando, 42 Pac. 64; Territory v. Leary, 8 N. M. 180.

The trial court acts well within its own discretion in granting or refusing an application for a continuance in a criminal case. Territory v. John Kinney, 3 N. M. 656; 3 Cyc. of Law and Pro. 169, and citations; 9 Cyc. 187.

The acts of officers de facto are as valid and effectual when they concern the public or the rights of third persons as though they were officers de jure. Wilcox v. Smith, 5 Wendell 231; Ferris v. The People, 35 N. Y. R.; Friery v. The People, 54 Barb, 319; Dolan v. The People, 64 N. Y. 485; Territory v. McFarlane, 37 Pac. 1111; Huntley v. The Territory (Oklahoma), 54 Pac. 314; 12 Cyc. 286-287; State v. McJenkin, 7 S. C. 21; State v. Lee, 35 S. C. 192; Rafe v. State, 27 Ga. 64; State v. Williams, 3 Stew. (Ala.) 454; Wilhelm v. People, 72 Ill. 468; Dotson v. State, 62 Ala. 141, 34 Am. Rep. 2.

The fact that a confession was made by the accused while under arrest or in confinement, and to the sheriff, constable, jailer, or other officer having him in custody at the time, will not render it involuntary so as to exclude it from evidence, unless there is also proof that it was induced by hope or fear. In such case it is not necessary that the confession should be preceded by an admonition placing the prisoner on his guard. 6 A. & E. Enc. of Law, 536-7; State of Missouri v. John Simon, 50 Mo. 370; State v. Carlisle, 57 Mo. 102; People v. Ramirez, 56 Calif. 533; People v. Jonas Redondo, 44 Calif. 538; People v. Long, 43 Calif. 444; People v. Abbott, 4 Pac. 769; People v. Rogers, 18 N. Y. 9; People v. McLaughlin, 44 Iowa 82; State v. Ellington, 43 Pac. 60.

In order to render diagrams, models, photographs and the like admissible in evidence, preliminary evidence should be given of the correctness of the representation; and when such evidence is introduced, this is a preliminary question for the determination of the trial judge; and his decision on

this question will not be reviewed by the appellate court. Jones on Evidence, vol. 2, sec. 414; Commonwealth v. Morgan, 159 Mass. 375, 34 N. E. 458; Blair v. Pelham, 118 Mass. 420; Walker v. Curtis, 116 Mass. 98; Commonwealth v. Coe, 115 Mass. 481.

Instructions on points which have been sufficiently covered by other instructions, may properly be refused, although they are correctly drawn and applicable to the evidence. 11 Enc. Pl. & Pr. 288; Anderson v. Territory, 4 N. M. 213; Territory v. Baker, 4 N. M. 236.

"A new trial is never to be granted if the court conceives that the substantial legal justice of the case has been reached, notwithstanding irregularities may have occurred." Wynn v. Railway Co., 17 S. E. 649; Campbell Real Estate Co. v. Wiley, 83 S. W. 251; Bank v. Cooper, 84 N. E. 236; Huston v. Vail, 51 Ind. 299; Dulany v. Rankin, 47 Miss. 391; Adams v. Webster, 25 La. An. 113.

### OPINION OF THE COURT.

PARKER, J.—The appellant was indicted on April 11th, 1905, charged with the murder of Antonia Carrillo de Mirabal on April 3rd, 1905, was tried on May 3rd, 1905, convicted of murder in the first degree, and on May 5th 1905, was sentenced to death.

1. Appellant complains of the denial of his motion for a change of venue. He filed his motion, setting up local prejudice against him and supported the same by the affidavits of four witnesses. The court required the witnesses to be produced and examined as to whether they were disinterested and, upon hearing, determined that they were not, and denied the motion. Counsel for appellant argue that the statute, Sec. 2881, C. L. 1897, is mandatory and, upon a showing in statutory form, no power resides in the trial court to enquire into the knowledge or disinterestedness of the supporting witnesses. The previous decisions of this court settle this question to the contrary and the same needs no discussion here. See Territory v. Gonzales, 68 Pac. 925, 11 N. M. 301; Territory v. Vialpando, 42 Pac. 64, 8 N. M. 211; Territory v. Leary, 8 N. M. 180.

2. Appellant complains of the denial of his motion for a continuance. He alleged that he was unable to secure the attendance of a witness who would testify that the deceased committed suicide. The prosecution thereupon admitted that the absent witness, if present, would testify as alleged in the motion for a continuance. The court thereupon over-ruled the motion. The admission was made in pursuance of Sec. 2987, C. L. 1897, which is a part of Chapter 6, L. of 1880, entitled "An Act to Regulate Practice and Procedure in the Courts," and applies to criminal as well as civil cases. Territory v. Kenney, 3 N. M. 656. No constitutional objection to the statute is urged. The court was right, therefore, in denying the continuance on this ground. Appellant further stated in his motion for a continuance "That he was indicted for the crime alleged against him on the 11th day of April, 1905; that in the limited time which the present term of the court will last, neither himself, his family, his attorney, nor anybody else, nor all combined will have a reasonable and sufficient time to prepare his defense if his case is tried at the present term of this court." Appellant is alleged to have committed the crime on April 3rd, was indicted April 11th, and put upon trial May 1st, 1905. It is true that the procedure was prompt in view of the serious character of the charge in its consequences to the appellant. But the gravity of the charge alone furnishes no reason for a continuance. If the appellant could as well present his defense today to a charge of crime committed yesterday as he could at a later time, there is no reason for a delay. In this case the law is perfectly simple and the facts plain. The charge is murder by shooting, and the defense is that deceased committed suicide. Appellant does not deny his presence at the scene but, in fact, testifies to the details of the alleged suicide. So far as appears, every person who could throw any light or sidelight on the facts and circumstances were present and testified. Appellant does not point out wherein the facts are complicated or show why he was not as fully prepared for his trial as he could ever be. The motion for a new trial

contains no hint that any new fact had been discovered tending to change the degree of appellant's guilt or to show his innocence. He merely asserts that the bald claim in his motion that he could not be prepared for trial was sufficient to require a continuance. This claim is not well founded. Assuming that decisions such as this, resting in the sound discretion of the trial court, will not be disturbed except for gross abuse of discretion, we decide that the action of the court below in denying the motion for a continuance in this case was entirely correct.

3. Appellant complains of the denial of his motion to quash the venire of petit jurors. He alleges as ground for said motion that two of the three commissioners to select the jury were also commissioners to select jurors for the preceding March term, in violation of Sec. 1, of Chapter 112, Laws of 1903. It appears that formerly the regular terms of the District for Lincoln County were fixed by law to be held on the first Mondays of March and September of each year. See Sec. 3, Chapter 71, Laws of 1903. On March 2, 1905, the time of holding said terms was changed to the first Mondays of April and October. Sec. 1, Chapter 25, Laws of 1905. On March 15, 1905, it was provided that the next regular term for the county should be held on the first Monday in April, (this was the term at which appellant was convicted) and that thereafter they should be held on the second Mondays of May and November of each year. It thus appears that no March term of court could have been held, the power to hold the same having been taken away before the same could have been held. The objection, then, to the commissioners becomes a purely technical one if, indeed, it is well founded upon the strict letter of the statute. The statute provides: "Every such commissioner shall be disqualified to select jurors for two successive terms of court." Sec. 1, Chap. 112, Laws of 1903. The whole object of the jury law, as it then existed, was to provide for rotation in office both as to commissioners and venire men. Its plain object was to provide against professional commissioners and jurymen and

thus bring a larger portion of the people into touch with the courts and the administration of the law. It was surely no violation of the spirit of the law to hold that commissioners who had selected the jurors for a term of court which was never held might act and select the jurors for the succeeding term. Nor was it a violation of the letter of the law. A term of court is not such unless it is held. When the term is opened by a proper judicial officer, jurors empaneled, and business transacted, it then becomes a term of court within the meaning of the jury law. The court was right in overruling the motion.

4. Appellant complains of the admission of an alleged confession by him as to the homicide. The form in which the same was introduced is as follows: Jose Gonzales, the deputy sheriff who made the arrest of appellant, testified that he ordered appellant to surrender and he replied that he would not; that he then ordered the posse to fire at appellant which was done; that witness thought he heard appellant groan and then ordered the posse to cease firing; that appellant then said not to shoot, that he would surrender; that witness then ordered appellant to get up and throw up his hands which he did; that when within about six yards from witness appellant dropped one of his hands and witness told him to again raise it or he would shoot appellant. Witness then testified: "I told him I was sorry for having shot at him; then he told me that he had killed the woman— (objection by counsel for appellant. Objection overruled). Then he said that he had killed a woman; I says to him, I came to arrest you because you have killed a woman, and he says, yes, I killed her". Objection was here interposed as follows: "We object to that and ask to have it stricken out, as no foundation has been laid for any admission on the part of defendant". The objection and motion were over-ruled. From this point of arrest appellant was taken to near the body of the deceased when the witness said: "At that time there was a great many people there; I don't know who they were; and I stopped them, and took Estolano Sanches, Rob

Hart and Bob Brady and went to where the deceased was. Then some one struck a match, I think it was Bob Hart —I was behind him. When they struck that match then I asked him if that was the woman he had killed—(objected to by counsel for defendant on the ground that the circumstances show that the statement was made when the defendant was put in fear. Over-ruled.) Then he says, yes." Another witness, Robert Brady, testified as follows: "Then Jose Gonzales says to Rosario, This is the woman that you have killed. (Objected to for the same reason heretofore mentioned. Overruled.) He says no. Then Jose Gonzales says to him again. Didn't you just tell me that you had killed her? Then he says, yes, this is the one that I killed." The same witness testified concerning the circumstances of the arrest: "Then he says to me, If I hadn't recognized you by the voice none of these s——s of b——s would have got me."

The fundamental principle upon which confessions have been excluded when induced by promises or threats, hope or fear, is that, under such circumstances, the temptation to speak falsely is so great as to render the statement entirely untrustworthy. Wigmore on Evidence, Sec. 822; 3 Ency. Ev. 328.

Another principle of exclusion is established by the highest court in the land, viz: That that portion of the fifth amendment to the Constitution of the United States which provides that no person "Shall be compelled in any criminal case to be a witness against himself", excludes involuntary confessions. Bram v. U. S., 168 U. S. 532.

These two principles of rules of exclusion are widely different in character and effect. Thus, under the former, the object is to exclude statements which are false. Under the latter the object may be to exclude statements which are true. Wigmore on Evidence, Sec. 823.

But under either of these rules, are the statements objectionable?

In the first place it is to be observed that no solicitation of any kind or character was made of defendant to make a statement, and no promise offered. Then, as soon as he surrendered, and before he had been informed

of the cause of his arrest, of his own motion he began to talk and stated that he had killed a woman. At the body of the deceased, he was interrogated by one of the posse whether the deceased was the one he had killed and he said she was. This was but a continuation of a statement begun by defendant without solicitation at the point of arrest and is not objectionable, within the doctrine of the Bram case, because of the interrogation. The defendant was not, therefore, moved to make the statement by any promise which excited hope in his mind of advantage or immunity. Again, no threats of injury of any kind were made. Every act of the officers in making the arrest was entirely legal and proper. They were not intended or designed to extort a statement from defendant by exciting his fears. If violence attended his arrest, the defendant was alone responsible for the same by his resistance. It does appear that a considerable number of people had gathered near the body of the deceased but not a single word was uttered by any member of the congregation and no act was committed from which a menace or threat could be implied. If fear induced the defendant to speak, it was the fear of the consequences of his crime to be suffered in a legal way and was not a fear of present danger excited by threats or by direct act or acts from which a menace could be reasonably implied. It is true defendant testified he was afraid and for that reason made the statements, but all the circumstances tended to refute this claim and the court so determined, and properly as we think. Under such circumstances every inducement was offered to deny the crime and none appeared to admit it. In such case a confession is voluntary. State v. Ingram, 16 Kan. 14, per Brewer J.; Cady v. State, 44 Miss. 332; State v. Ware, 62 Mo. 597; 12 Cyc. 476.

5. Appellant urges that a diagram showing the country and position of the body of deceased, the defendant when arrested, and other parties, was introduced without proof of its correctness. In the first place the record fails to disclose the introduction of the diagram and it was probably simply introduced in connection with

and as illustrative of the witness's testimony. In the second place the diagram is shown on cross-examination by the testimony of the witness who made it that it was correct. It was therefore correctly exhibited to the jury.

6. Objection is made to the refusal of the court to give two instructions on the law of confessions asked by the defendant. The law of confessions was correctly and fully given to the jury in its own instructions. There is no requirement under such circumstances to give instructions asked for, even if correct in point of law, if those given by the court cover the case and submit it properly to the jury. Territory v. Taylor, 71 Pac. 489; 12 Cyc. 662.

7. Appellant complains of the action of the court in overruling the motion for a new trial. The motion after setting up the alleged errors complained of occuring at the trial, set up the disqualifications of one of the jurors who tried the case. This ground of the motion was supported by the affidavits of three persons to the effect that shortly before the selection of the juror he expressed to the affiants that he had formed and expressed an opinion as to the guilt of defendant and could not serve as a juror; that defendant should have been hanged before he was taken to jail. Defendant also made affidavit that he first learned of this fact after verdict. No affidavit of his counsel was presented showing the same lack of knowedge on their part.

The affidavits in support of the motion were, in the first place, defective and insufficient in not showing lack of knowledge by both defendant and his counsel. The reason for such rule is at once apparent. The relation between client and counsel is so intimate and the duty of counsel to client to act promptly in his behalf is so imperative that the acts or omissions of counsel must, in the ordinary administration of justice, be held to be the acts or omissions of the client. The court deals directly with the counsel only. Hence it is that where a question of waiver by reason of notice and failure to act thereon concerning matters of this kind arises, the court must know that neither litigant nor

counsel had the notice. 12 Cyc. 747; .Brown v. State,
60 Miss. 447; State v. Nocton, 121 Mo. 537; Clough v.
State, 7 Nebr. 320; Parks v. State, 4 O. St. 234.

But looking at the question from a different stand-
point the position of defendant is equally untenable. The
ordinary function of a motion for a new trial is to call
attention of the Trial Court to errors committed on the
trial and thus preserve the questions for review.  But in
such cases as this the motion, so far as it relates to the
disqualification of a juror, is addressed to the sound
**9**  legal discretion of the Trial Court and the action of
the court is not reviewable.  12 Cyc. 712; 14 Ency.
Pl. and Pr. 955; State v. Lambert, 93 N. C. 618; Mc-
Clain v. Com., 110 Pa. St. 263; Kearney v. Snodgrass,
12 Or. 311; Beckman v. Hamilton, 23 Or. 313; White v.
Trinity Church, 5 Conn. 187; Moulton v. Jose, 25 Me.
76; Sittig v. Birkestack, 38 Md. 158; Cuddy v. Major, 12
Mich. 368; Moore v. Darber, 92 Mich. 402.

The rule is the same in Federal Courts.  Mattox v.
United States, 146 U. S. 140; Alexander v. United States,
57 Fed. 828.

This court has in a considerable number of cases pas-
sed upon the question of power to review the action of
the District Court resting in discretion.  In several the
power has been denied and in some the power has been
admitted where there has been an  abuse  of  discretion.
The cases are here collected:   U. S.  v.  Lewis,  2 · N.
M. 459; Coleman v. Bell, 4 N. M. 21; Sanchez v. Can-
delaria, 5 N. M. 400; Territory v. Las Vegas Grant, 6
N. M. 87; U. S. v. De Amador, 6 N. M. 163; Buntz v.
Lucero, 7 N. M. 219; Roper v. Territory, 7 N. M. 255;
Railroad Company v. Saxton, 7 N. M. 302; Thomas v.
McCormick, 1 N. M. 369; Territory v. McFarlane, 4 N.
M.421; Territory v. Kelly, 2 N.M. 292; Faulkner v. Terri-
tory, 6 N. M. 464; Lockhart v. Woolacott, 8 N. M. 21;
Territory v. Barnett, 8 N. M. 70; Garcia v. Candelaria,
9 N. M. 374; Schofield v. Territory, 9 N. M. 526; Ins.
Co. v. Perrin & Co., 10 N. M. 90.

In all of these cases the discretion of the lower court
in matters of this kind is admitted but in some of them

what is called an abuse of discretion is allowed as ground for reversal. But most of the latter cases, some of them capital cases, deny the power of this court in such matters. The latter is the correct rule.

But even admitting the power of this court to review a discretion of the Trial Court in refusing to grant a new trial, there was no abuse or discretion in this case. The juror on his voir dire was thoroughly examined as to his qualifications. He testified that he had heard of the case; had no prejudices against the defendant; and would give the defendant a fair and impartial trial according to the evidence of the witnesses. On cross-examination by counsel for defendant he stated that he had heard what purported to be the facts and had formed and expressed an opinion as to the defendant's guilt or innocence. Then the following examination was had.

Q. Then as I understand you have formed or expressed an opinion from what you have heard as to the guilt or innocence of this defendant?

A. Yes, sir.

Q. Is that opinion with you still?

A. Yes, sir.

Q. Now if the evidence in this case was fairly and evenly balanced for and against this defendant, would what you have heard have any influence on your mind in making up your verdict?

A. No, sir.

Q. Are you certain of that?

A. Yes, sir.

Q. Think over the meaning of this question?

A. I think I understand it.

Q. If the evidence was fairly evenly balanced between the Territory and the defendant would what you have heard have any effect upon you in making up your verdict as to whether the defendant was guilty or innocent?

A. It would not.

Q. Are you certain of that?

A. Yes, sir.

Q. Well under these circumstances—of having heard about this case and having formed an opinion—do you

Territory v. Emilio.

feel that you could honestly sit in this jury box and try this defendant from the evidence and the charge of the court here, regardless of what you have heard?

A. I dont' think it would have any influence.

Q. You say you don't think so?

A. I am sure.

Q. You are sure of it?

A. Yes, sir.

Q. Have you ever tried yourself?

A. I have studied the matter out pretty closely; I have never been on a jury. I think it is a juryman's duty to try the case according to the law and the evidence.

Q. The point is, that having heard about the case, and having formed an opinion as to the guilt or innocence of the defendant. Now, the question is, after you have heard the evidence, and it was fairly evenly balanced up, would that opinion have any influence on your mind as to what you would do in rendering your verdict?

A. My position is this, Mr. Barber, that an opinion that I have formed on hearsay evidence would not affect me after I had heard the evidence on the trial.

Q. Would it require evidence to remove this opinion that you have?

A. Of course if I should not hear any evidence I would still have the opinion.

Q. Then it would require evidence to remove that opinion that you have?

A. Yes, sir.

Upon re-direct examination the witness stated:

Q. Now this opinion that you have formed doesn't have any weight with you after you have taken your oath to try this case, does it?

A. No, sir; no weight whatever.

Examination by the Court:

Q. And you think that any opinion or impression that you might have formed in your mind—that you can sit and try this case and give this defendant a fair and impartial trial upon the law and the evidence?

A. I do. Yes, sir.

It appears that F. M. Crocket, the affiant in support

of the motion, was a member of the regular panel of the jury and was excused by the prosecution, presumably, by reason of his having talked about the case with a member of the family of the defendant, as appears from the record of his examination. As to who and what the other two affiants in support of the motion were, the record is silent. It thus appears that a question of fact was presented to the Trial Court as to whether the allegations set up in the motion were true in fact, and whether, if true in fact, they disqualified the juror. He saw and presumably knew the juror and affiants and was in a better position to find the truth than anyone else. He may have disbelieved the affidavits by reason of the intimacy disclosed between one of the affiants and the family of the defendant, or by reason of the character and standing of the affiants. He may have believed the juror by reason of his standing and character. On the other hand, he may have believed the fact of the alleged statement of the juror to the affiant and have believed the statement to have been made in a suppositious or tentative way and assuming the hearsay or rumor upon which the statement was founded to be true. The real question was, whether the juror was, a fair and impartial juror willing and capable to be guided solely by the evidence and the court found that he was. It is impossible for us to put with what the record contains the additional and most important consideration viz: The character, standing and demeanor of the parties, and which the court had before it when it acted. We cannot say, therefore that the court was wrong in its conclusion.

8. While the disqualification of the juror on his own statements is not argued in the briefs, we assume that the question is before us, he having been challenged for cause and the challenge overruled, and the defendant having exhausted all of his challenges when the jury was sworn.

A discussion of what constitutes a disqualification of a juror by reason of any opinion as to the merits of a criminal case is much narrowed by a controlling authority. Spies v. Illinois, 123 U. S. 131.

The Constitutional Guaranty is that in all criminal prosecutions the accused shall enjoy the right to a trial

by an impartial jury, and is contained in Article Six of the Federal Constitution.

In Illinois a statute was in force to the effect that although a juryman may have formed an opinion based upon rumor or upon newspaper statements he was still qualified as a juror if he stated that he could fairly and impartially render a verdict in accordance with the law and the evidence. In the Spies case not only this law was attacked but the disqualification of two of the jurors who tried the case was challenged upon the ground that the defendant's constitutional rights were thereby invaded. The Supreme Court in that case, agreeing with the Supreme Court of Illinois, held both that the statute was constitutional and that the jurors who qualified thereunder were fair and impartial within the meaning of the Constitional Guaranty.

And in this case while the juror had heard by means of public rumor what the facts purported to be in this case, yet he clearly and unequivocaly stated that he could and would lay aside his opinion thus formed and try the defendant fairly and impartially upon the evidence as it was produced in the Trial Court, and he was consequently a qualified juror.

9. Looking at the question of the right of the defendant in this case to a new trial from a broader and more fundamental standpoint, it is clear that he has no such right. New trials are granted for the protection of the innocent and not for the purpose of shielding the guilty. An examination of the record in this case discloses an absolute certainty of the guilt of the defendant. He had been living with the deceased as his mistress and she was about to leave Lincoln, going to Roswell. She was traveling with some of her relatives upon a wagon load of fence posts. The defendant followed the wagon on horseback, several times passing in front of the wagon and then waiting until the wagon passed on beyond the point where he had stopped. The deceased finally left the wagon and went to where he was and they traveled a short distance up a canon and remained there together for some little time. She received two bullet wounds, one entering

the right side and passing through the right lung, the left lung, the pulmonary artery, the pulmonary vein and the aorta, passing out of the body through the left arm, and the other entering at the right eye and severing the left part of the skull from the rest of the head. Either of these wounds would cause instant death as was shown by expert testimony introduced in the cause. Immediately upon the firing of the shots two boys saw the deceased lying on the ground still quivering in the rigors of death and saw a man running from the scene with a gun in his hand. These boys gave the alarm to the officers, and within a short time the defendant was arrested at a distance of 503 steps from the scene of the murder. Upon being arrested and without being informed of the cause of his arrest he commenced to talk and said that he had killed a woman, and later upon view of the body of the deceased stated she was the woman he had killed.

The defense in the case is that deceased committed suicide, by shooting herself, and the defendant testified to the details of such alleged suicide. It was a physical impossibility for deceased to have fired more than one of the shots. When all the facts and circumstances are seen and examined it at once appears that the proof of the defendant's guilt is simply overwhelming and that the defense set up by him is absurd and preposterous. To grant a new trial in this case would be to pervert the law and render its attempted enforcement a farce.

The judgment of the court below will therefore be affirmed and Friday, March 22, 1907, is hereby designated and fixed as the day on which the said judgment shall be carried into execution and it is so ordered.