(SWEAT-BOX CASE.)

EDWARD AMMONS *v.* STATE OF MISSISSIPPI.

CRIMINAL LAW. · *Evidence.   Confessions.   Sweat-box.*

Sweat-box confessions are not admissible in evidence.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

Ammons, appellant, was indicted, tried, and convicted of burglary.   On the trial certain confessions of the defendant, obtained by the aid of a sweat-box in the manner mentioned in the opinion of the court, were offered in evidence against defendant over his objection.   Without the confessions there was not sufficient evidence to support the verdict.   From the conviction the defendant appealed to the supreme court, assigning as error the admission of the confessions.

*D. Marshall* and *Theodore G. Burchett, Jr.,* for appellant.

Before a confession can be introduced it must be shown to be voluntary. *Ellis* v. *State,* 65 Miss., 47; *Williams* v. *State,* 72 Miss., 117; *Simmons* v. *Stale,* 61 Miss., 243; Greenleaf on Evidence (15th. ed.), 296 sec. 219.

By the direction of the chief of police the defendant was thrown into the "sweat-box." Blankets were put around this compartment to exclude light and air.   It was summer time when this was done, and the heat must have been terrible to a person so environed.   The prisoner was not allowed to have any communication with relatives or friends.

During the several days in which the detectives and police officers were hunting the property the chief of the police and the other officers questioned him in regard to the crime.   The chief of police not only did not tell him he did not have to

answer the question, but on the contrary, testified that it was his orders that prisoners should be kept in this sweat-box until they told him what he (the chief of police) thought they ought to tell him.   Mark you, not what was the truth, but what the chief thought he ought to be told.   The chief of police, having gotten hold of some of the stolen property, told defendant that it was "best for him to tell what was right," that "it was better for him to tell the truth."   He also told the prisoner, fresh from the tortures of the sweat-box, that, if he did not quit stealing the white folks would hang him.

If the confession has been extorted by duress or fear, as by threat of violence, or any increased rigor of confinement, or by any other menace which can inspire dread or alarm, it will be excluded.   *Simon v. State,* 37 Miss., 288; 8 Am. & Eng. Enc. Law, 528; *Johnson* v. *State,* 76 Ga., 76; *Redd* v. *State,* 69 Ala., 255; *Beckham* v. *State,* 100 Ala., 15; *Miller* v. *People,* 39 Ill., 457; *Stale* v. *Hobbs,* 2 Tyler (Vt.), 380.

If an inducement be held out by mere implication, as where the prisoner was advised to confess, or that he had better own up, and he makes the confession in reliance upon such statement, the confession will be inadmissible.   6 Am. & Eng. Enc. Law, 530; *Hamilton* v. *State,* 77 Miss., 675; *Ford* v. *State,* 75 Miss., 101; *Peter* v. *State,* 4 Smed. & M., 31; *Com.* v. *Nott,* 135 Mass., 269; *State* v. *York,* 37 N. H., 175.

Of course, a mere exhortation to tell the truth does not render the confession inadmissible, but when an officer, without advising a prisoner of his privilege of not answering the questions, tells him he had better tell what is right, and it would be better to tell the truth, the courts have uniformly excluded such a confession.   *Regina* v. *Romp,* 17 Ont. Rep., 567; *Regina* v. *Diherty,* 13 Cox C. C., 23; *Commonwealth* v. *Meyers,* 160 Mass., 530.

On the proposition of fear produced by the remarks of the chief of police in regard to the hanging of the prisoner.   *Williams* v. *State,* 72 Miss., 117.

*Monroe McClurg,* Attorney-General, for appellee.

The brief of counsel for appellant pictures the "sweat-box" in the city jail as a most horrible place. Much of the picture is drawn from imagination. The record shows that the apartment called the "sweat-box" was simply a small room in one corner of a large room.

There is a distinction between the confession in this case and the one in *Hamilton* v. *State,* 77 Miss., 675. Hamilton made a confession to his employer, and the officer testified that he supposed the confession was made as a result of the employer's talk to Hamilton. The relationship between the police officer and the appellant in this case is entirely different from the relationship of the employer and employe in the Hamilton case. Unless the court disregards the testimony of Price relative to the confession being voluntary, it will hold the confession admissible.

Calhoon, J., delivered the opinion of the court.

The chief of police testified that the accused made to him a "free and voluntary" statement. The circumstances under which he made it were these: There was what was known as a "sweat-box" in the place of confinement. This was an apartment about five or six feet one way and about eight feet another. It was kept entirely dark. For fear that some stray ray of light or breath of air might enter without special invitation, the small cracks were carefully blanketed. The prisoner was allowed no communication whatever with human beings. Occasionally the officer, who had him put there, would appear, and interrogate him about the crime charged against him. To the credit of our advanced civilization and humanity it must be said that neither the thumbscrew nor the wooden boot was used to extort a confession. The efficacy of the sweat-box was the sole reliance. This, with the hot weather of summer, and the fact that the prisoner was not provided with sole leather lungs, finally, after "several days" of obstinate denial, accom-

Opinion of the court.

plished the purpose of eliciting a "free and voluntary" confession. The officer, to his credit, says he did not threaten his prisoner, that he held out no reward to him, and did not coerce him. Everything was "free and voluntary." He was perfectly honest and frank in his testimony, this officer was. He was intelligent, and well up in the law as applied to such cases, and nothing would have tempted him, we assume, to violate any technical requirement of a valid confession—no threats, no hope of reward, no assurance that it would be better for the prisoner to confess. He did tell him, however, "that it would be best for him to do what was right," and that it "would be better for him to tell the truth." In fact, this was the general custom in the moral treatment of these sweat-box patients, since this officer says, "I always tell them it would be better for them to tell the truth, but never hold out any inducement to them." He says, in regard to the patient, Ammons, "I went to see this boy every day, and talked to him about the case, and told him it would be better for him to tell the truth; tell everything he knew about the case." This sweat-box seems to be a permanent institution, invented and used to gently persuade all accused persons to voluntarily tell the truth. Whenever they do tell the truth—that is, confess guilt of the crime—they are let out of the sweat-box. Speaking of this apartment, and the habit as to prisoners generally, this officer says, "We put them in there [the sweat-box] when they don't tell me what I think they ought to." This is refreshing. The confession was not competent to be received as evidence. 6 Am. & Eng. Enc. Law, p. 531, note 3; *Id.,* p. 550, note 7; *Hamilton* v. *State,* 77 Miss., 675 (27 So., 606); *Simon* v. *State,* 37 Miss., 288. Defendant, unless demented, understood that the statement wanted was confession, and that this only meant release from this "black hole of Calcutta." Such proceedings as this record discloses cannot be too strongly denounced. They violate every principle of law, reason, humanity, and personal right. They restore the barbarity of ancient and medieval methods. They

obstruct, instead of advance, the proper ascertainment of truth. It is far from the duty of an officer to extort confession by punishment. On the contrary, he should warn his prisoner that every statement he may choose to make may be used against him on his trial.

*Reversed and remanded.*