[No. 2299, Aug. 4, 1919.]
## STATE v. FOSTER.

### SYLLABUS BY THE COURT.

1. The evidence in this case reviewed, and **held**, that the confession made by appellant was involuntary.          P. 362

2. A cattle inspector and the owner of the cattle appellant was accused of stealing **held** to be "persons in authority," within the rule excluding a confession of a defendant in a criminal case, where the confession is induced by promises of immunity made by persons in authority.          P. 364

Appeal from District Court, Chaves County; McClure, Judge.

Otis Foster was convicted of larceny of cattle, and he appeals. Reversed and remanded, with instructions to grant a new trial.

L. O. FULLEN, of Roswell, for appellant.

Confession was involuntary and hence inadmissible.

State v. Ascarate, 21 N. M. 201; U. S. v. Pumphreys, 27 F. Case. No. 16097; People v. Gonzales, 136 Cal. 666; People v. Phillips, 42 N. Y. 200; Pains v. Stake, 33 Tenn. Crim. 294; State v. Potter, 18 Conn. 166; Taylor v. Com., 8 Ky., op. 401; State v. Jaquez, 30 R. J. 578; 1 Wigmore on Evidence, 815 et seq.; 1 Elliott on Evidence, 271, 273; Jones on Evidence (2d Ed.) 235; Overhill, Criminal Evidence, 160; Hughes on Evidence, 7; Bram v. U. S., 18 U. S. 533; State v. Armijo, 18 N. M. 262.

CARL H. GILBERT, of Santa Fe, Special Asst. Atty. Gen., for the state.

Where the evidence is conflicting as to whether confession was voluntary or not the question is not one of law but of fact to be determined by the jury under instructions of the court.

12 Cyc. 482; Wilson v. U. S., 162 U. S. 613; State v. Armijo, 18 N. M. 262; State v. Ascarate, 21 N. M. 191; State v. Anderson, 174 Pac. 215; 16 C. J. 727; State v. Woodward, 182 Mo. 391; Ariola v. State, 183 S. W. 144; Cornell v. State, 104 Wis. 527.

### OPINION OF THE COURT.

MERRITT C. MECHEM, District Judge.

The appellant appeals from a conviction of larceny of cattle. His confession of the crime to Lee J. Richards, a cattle and hide inspector, and to W. A. Hamilton, the owner of the stolen cattle, was introduced by the state over appellant's objection, that the same was involuntary, having been induced by promises of immunity made by both Richards and Hamilton. The court was of the opinion that there was a conflict in the evidence whether the confession was voluntary or involuntary, and let it go to the jury, under an instruction that if they believed that the confession was voluntary they could consider it in arriving at their verdict, but if they believed that it was involuntary they should not so consider it. This action of the court is assigned as error.

[1] The undisputed facts in the case are: That the appellant, learning that he was under suspicion, went into hiding. That his mother went to a neighbor, H. C. Hammond, and asked him to see what could be done in appellant's behalf. Hammond called on Richards and asked him to see Hamilton, and see if Hamilton would be inclined to deal leniently with the appellant, if the appellant would come in and tell all he knew about the case. Richards told Hammond that he (Richards) would see Hamilton, and if Hamilton would help the appellant, Richards would bring Hamilton to Hammond's house at a named hour, and that if they came Hammond could in-

form appellant that Hamilton would help the appellant, if he would come to Hammond's house and meet them, and tell them all he knew about the case. Hammond so informed the appellant, and when, according to the arrangement, Richards and Hamilton came to his house, Hammond sent for the appellant, who came in, met Richards and Hamilton, and confessed. There is a conflict in the testimony whether or not, at the time appellant confessed and immediately prior thereto, Richards and Hamilton promised him immunity. Richards denies that they did. The appellant testified that they made him the promises immediately before he confessed. Hamilton did not appear as a witness in the case.

But we believe the court misapprehended the conclusive effect of the facts leading up to the making of the confession, for it was established by the testimony of all the witnesses, including Hammond, that the confession was brought about by Richards telling Hammond that he (Richards) would see how Hamilton felt about the matter, and, if Hamilton would not push the case, Richards would bring Hamilton to Hammond's house for a meeting with appellant, and that Hammond could tell appellant that, if they came, appellant could understand that Hamilton would not prosecute him. Richards, just before leaving the stand, testified as follows:

"Q. And do you know you arranged a meeting? A. Yes, sir.

"Q. And you conveyed the impression, by what you said and what you did, to Hammond, that if the boy did come up there with Hammond that he could know that it was all right and that Hamilton was not going to prosecute him. Didn't you? A. Well, that was—appeared to be kinder the understanding.

"Q. Well, appeared to be; you was there, and your old brain works. You know what you did; that was what happened, wasn't it? A. Well, we went over there two or three times.

"Q. Well, just answer the question, Mr. Richards; you know that the arrangement was made, and that was the understanding that when the boy showed up there and told about this thing that Hamilton, the owner of these cattle, and you,

as far as you could, was going to help the boy; now, wasn't that the arrangement? A. Well, yes, in a way it was.

"Q. Well, in a way it was; wasn't the way, not in way; wasn't that the arrangement? A. That was the agreement between us and Hammond; we made no agreement with the boy, and had no conversation with the boy.

"Q. But you did make an agreement with Hammond, and Hammond had talked with you for the boy, didn't you? A. Yes, sir."

At another point in his examination Richards testified:

"Q. Were you requested by Hammond to get anything in the nature of a promise on the part of Hamilton as to what he would do, any definite or specific promise as to what he would do, if the boy would talk and tell what he knew? A. Well, that was the nature of it; it was to get Hamilton and see Hamilton's feelings in the case, and I don't suppose that, if Hamilton had said, 'No, I am going to prosecute the boy to the full limit, every way, don't matter whether he talks or don't talk,' I don't suppose there ever would have been any meeting made between us and the boy; but, as I said before, Hamilton felt like there might be somebody else interested in it, and the boy said he wanted to tell the facts of the case, but he did not say what the facts were, or did not lead us to believe what the facts were in any way."

There was no necessity of Richards repeating to appellant the promises theretofore conveyed to appellant by Hammond, to make the inducement complete. The promises communicated to appellant by Hammond were confirmed by both Richards and Hamilton, by their going to meet the appellant, pursuant to the arrangement they made with Hammond, and of which the appellant had notice. The appellant's confession was involuntary, and the court erred in admitting it.

[2] Appellee insists that, even though the confession was involuntary, the promises which induced it were not made by persons in authority. But the question must not be whether the persons making the promises were persons in authority—that is, capable of performing their assurances of immunity, but were they in such a situation that the person confessing might reasonably consider them as persons able to afford him aid? 1 Bishop's New Criminal Procedure, 1234. That the ap-

pellant in this case had abundant reason to believe that the owner of the cattle and a cattle inspector had it in their power to do him very considerable favors, in the situation he was in, is not to be seriously questioned.

There is no more convincing evidence to the ordinary man than a confession of guilt, and where a confession is admitted, under an instruction to the jury to determine whether it is voluntary or involuntary, and to consider it in the former case, or in the latter case to reject it, the probabilities are, unless the confession was extorted under circumstances calculated to arouse sympathy for the defendant, that the average jury will consume but little time in determining the question of whether the confession was voluntary or involuntary, but will in the great majority of cases say the prisoner has confessed, and therefore is guilty beyond a reasonable doubt.

The judgment of the lower court is reversed, and the cause is remanded, with instructions to grant appellant a new trial; and it is so ordered.

PARKER, C. J., and ROBERTS, J., concur.

### SYLLABUS BY THE COURT.