[No. 3219. Feb. 18, 1930.]

[Rehearing Denied June 20, 1930.]

[Second Rehearing Denied Aug. 8, 1930.]

STATE v. WOO DAK SAN.

[290 Pac. 322.]

Alvan N. White, of Silver City, for appellant.

R.: C. ;Dow, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

OPINION OF THE COURT

PARKER, J.

Inasmuch as we have determined to make a disposition of this case different from that indicated in the opinion heretofore handed down, that opinion will now be withdrawn.

On September 11, 1925, the appellant, Woo Dak San, alias Woo Foo, was charged by information with the murder of one Yee Foo in the district court of Grant county. On the same day the defendant was brought into court, arraigned, and pleaded not guilty to the charge in said information, and the cause was set for trial on the 15th day of September, 1925. A jury was duly and regularly impaneled and sworn, and, after the evidence was introduced and the cause duly submitted to the jury and they had been for some time considering of their verdict, they returned into court, and as appears from the journal entry the following proceedings were had:

"Come now the jury herein again into open court at 1:20 A. M. and through their foreman inform the court that they are unable to agree upon a verdict; that the jury as a body now stands 7 for conviction and 5 for acquittal and that one of the members of the jury standing for acquittal has informed his fellow jurors that he does not believe in capital punishment, which fact renders the arrival at a verdict, impossible.

"Now the foreman of the jury being asked by the court the name of the juror who declared in the jury room during the deliberation upon this verdict that he did not believe in capital punishment, the court was informed that the name of such juror is .Anastacio Horcasitas.

"It is the further order of the court that the trial of cause No. 7988, wherein the State of New Mexico is plaintiff and Woo Dak San, alias Woo Foo is defendant, be and the same is hereby declared a mistrial, and that the said Woo Dak San, alias Woo Foo, be remanded to the custody of the Sheriff of Grant County, New

Mexico, to be by him safely kept and confined in the common jail of Grant County, New Mexico, to await the further order of the court."

The foregoing record and journal entry was originally made on the 17th day of September, 1925, and contained other matters relating to a proceeding against one of the jurors for contempt which were afterwards stricken out by the district judge. On March 1, 1926, the same being the first day of the next term of court, and at the first opportunity afforded the defendant, the defendant by leave of the court withdrew his plea of not guilty and filed a special plea of former jeopardy, alleging the facts and circumstances as they occurred at the former trial. He alleged "that the said jury, without the consent of" the defendant, was discharged. No allegation is made in such plea that the defendant objected to the discharge of the jury, which is quite a different matter. It does not appear that the attention of the court was in any way called to any claim of the defendant that he was entitled to a verdict, or that he relied upon the jeopardy which had already attached as a bar to further prosecution. In other words, it appears that, when the court discharged the jury, either because they could not agree, or for no legal reason, the defendant and his counsel stood mute and made known to the court no objection to the action taken. Under such circumstances, the constitutional guaranty against second jeopardy is waived. There is a fundamental principle permeating the entire law that parties must make known to the court their objections to the action, or proposed action, of the court; otherwise the objection will be deemed to be waived. This must necessarily be so; otherwise the administration of the law, designed as it is to ascertain the truth by legal methods and to apply the law to such facts so ascertained, must descend to a mere play in which the sharp practitioner may match his wits against the court and often defeat the ends of justice.

In regard to the immediate question of the necessity of objection to the discharge of the jury where jeopardy has attached in order to render a plea of former jeopardy available, we have but one case in this jurisdiction where it has been considered. See Territory v. Donahue, 16 N.

M. 17, at page 24, 113 P. 601, 603, opinion by Mechem, J., where it is said:

"The objection not appearing on the record proper nor by bill of exceptions, as far as the record is concerned, it appears that the jury was discharged without objection and with the implied consent and in the presence of the appellant."

This statement is undoubtedly sound and in accordance with sound principles of judicial procedure. See, also, Stone v. State, 160 Ala. 94, 49 So. 823, 135 Am. St. Rep. 69, and note; 1 Cooley Constitutional Limitations (8th Ed.) p. 690; 1 Bish. Crim. Law (9th Ed.) § 998; 8 R. C. L. "Crim. Law," § 143. There is authority to the contrary, but we do not deem the same of controlling importance. We have determined to adhere to the principles announced in the Donahue Case, supra, as sound and in accordance with reason and the better authority. The defendant therefore is held to have waived his right to plead former jeopardy in this case by his silence when the jury was discharged.

Inasmuch as this conclusion is of such tremendous importance to the defendant, he being under sentence of death, we have taken it upon ourselves to say officially to the district attorney and the attorney for defendant that, if a bill of exceptions could be obtained from the district court showing that objection was made to the discharge of the jury, we would issue our writ of certiorari to have the same brought up and made a part of the record here. No such bill of exceptions has been forthcoming.

It appears that the jury came into open court and through their foreman announced that they were unable to agree upon a verdict. He was asked by the court how the jury stood as to numbers, and he replied that they stood seven to five, and he stated that one of the jurors was opposed to capital punishment, which juror he named. While it does not appear in the record, it does in the plea of former jeopardy that the court then examined said juror, and he said that he had not understood the questions asked of him, but he did not deny that he was opposed to capital punishment. Under such circumstances the court was undoubtedly authorized to declare a mistrial and discharge the jury. The court is authorized to accept

the statement of the jury as to their inability to agree. 16 C. J. "Crim. Law," § 408; 1 Bish. Crim. Law (9th Ed.) § 1033. These are matters resting, necessarily, in the discretion of the court, and we can see no abuse of that discretion in this case. See 8 R. C. L. "Crim. Law," § 148.

The record in this case is that the jury came into court at 1:20 a. m. of the day following the one in which the case was submitted to them and reported that they could not agree upon a verdict and that a verdict was impossible owing to the opposition of one of the jurors to capital punishment. The court thereupon declared a mistrial and discharged the jury. Under such circumstances it is immaterial whether the defendant objected or not. The demurrer to the plea of former jeopardy was properly sustained by the court.

■■ The defendant made a confession in which he told the details of the homicide, which confession was introduced in evidence against him. It appears that the defendant was a drug addict and was in bad condition for some of the drug at the time the county physician first visited him in the jail. This doctor importuned the defendant to make a statement or confession, and he at first refused until after he had some of the drug administered, but the doctor refused to administer the same until after the statement was forthcoming; the doctor leaving him in jail with directions to send for the doctor as soon as he was willing to talk. The doctor returned to the jail later in the day and defendant told him the details of the crime and said he struck deceased with an ax, which blow, the testimony shows, was sufficient to cause death. He said his companion struck deceased with a knife. The doctor testified that at the time of making this admission or confession the defendant was in full possession of his faculties. Afterwards defendant was examined by counsel for the prosecution and his statement reduced to writing, which statement was introduced in evidence against defendant. Before making the statement, defendant was warned that his statement would be used against him, and the doctor in attendance upon defendant testified that defendant was in full possession of his faculties. Before

the statement was allowed to be introduced, the court allowed defendant to testify as to his condition when he made it, and he testified that the confession was false and that he made it in order to obtain the drug to which he was addicted. The court instructed the jury that before they could consider such confession they must believe beyond a reasonable doubt that defendant made the same, and that he made the same freely and voluntarily and without any exterior force, threats, or coercion, or any exterior influence that operated to deprive it of freedom, and made it when he was not under the influence of drugs administered at the time or shortly theretofore and not for the purpose of obtaining such drug to the use of which he was addicted, and that such confession, if obtained under any such circumstances, would not be voluntary, and it must, in that event, not be considered by the jury.

The question as to the inadmissibility of a confession has been frequently considered by this court. See State v. Dena et al., 28 N. M. 479, 214 P. 583, where the previous cases are collected. See, also, State v. Martinez, 30 N. M. 178, 230 P. 379. None of these cases, however, quite cover and dispose of the present case.

It is to be remembered that the principle upon which confessions are held, under certain circumstances, to be inadmissible, is that they are deemed to be testimonially untrustworthy. 2 Wig. Ev. (2d Ed.) § 822; Territory v. Emilio, 14 N. M. 147, 156, 89 P. 239. Another test has been applied, but it need not be considered. See Territory v. Emilio, supra, citing Bram v. U. S., 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568.

Certain kinds of inducements to the person charged with crime are held, in and of themselves, not to render his confession inadmissible as untrustworthy.

"It will be received, though it were induced by spiritual exhortations, whether of a clergyman or of any other person; by a solemn promise of secrecy, even confirmed by oath; or by reason of the prisoner's having been made drunken; *or by a promise of some collateral benefit or boon, no hope of favor being held out in respect to the criminal charge against him;* or by any deception practiced on the prisoner, or false representation made to him for that purpose, provided there is no reason to suppose that the inducement held out was calculated to produce any untrue confession, which is the main point to be considered."

1 Greenleaf on Ev. (13th Ed.) § 229, and notes citing cases.

See, also, on this subject 2 Wig. Ev. (2d Ed.) §§ 835 and 836.

"Not only must the benefit which influenced a confession be temporal to make the confession involuntary, but it must have reference to the person's escape from punishment for the crime with which he is charged, or his partial escape."

1 R. C. L. "Admissions and Declarations," § 103.

See Ammons v. Miss., 80 Miss. 592, 32 So. 9, 92 Am. St. Rep. 607, 18 L. R. A. (N. S.) 768, and note at page 827, where a large number of cases are collected relating to a promise of collateral benefit. See, also, 16 C. J. "Crim. Law," § 1490; 2 Chamberlayne, Modern Law of Ev. § 1514.

We understand these authorities to mean that promises of collateral benefit or boon not relating to immunity from the consequences of the crime are not, ex proprio vigore, sufficient to render the confession inadmissible as involuntary, and where they are not, under all the circumstances, sufficiently strong to overcome the will of the declarant so as to cause an innocent man to confess falsely, the confession is admissible.

And in this case it appears that no promises of immunity were made by any one to the defendant. The county physician found him in the jail in a physical and mental condition of his own making, and, when he asked for the drug to which he was addicted, the doctor told him he would give it to him as soon as he had told the doctor about the killing. The doctor also testified that defendant was only a moderate user of the drug and was not in a condition so that he would admit away his life to obtain the small amount of the drug required to relieve him, and that he was in the full possession of his faculties and knew what he was doing. Under such circumstances the judge determined that the confession was voluntary and it was admitted in evidence. We cannot see how, under such circumstances, the court can be put in error. He admitted the confession and submitted its weight to the jury, and went further, perhaps, than required in protect-

ing the defendant in his instructions. Even let us suppose that the judge decided differently on the facts from what we might decide, we are still at a loss to see how we can put him in error. It was a matter resting in his judgment on the facts, and there was evidence to support his conclusion, and no rule of law was violated.

It has been suggested, in view of our conclusion in this case, that some of our former decisions, which we are free to say go far in excluding confessions, should now be modified. But we have concluded that, as none of the former cases dealt with the question of collateral benefit or boon, they need not at this time be specifically modified.

We find no error in the record, and the judgment of the lower court will be affirmed.

█ Since the defendant was sentenced, the law providing for death by hanging has been repealed and chapter 69, Laws of 1929, has been enacted. This act provides that the death penalty shall be inflicted by electrocution in the penitentiary. Formerly this court was authorized and directed to fix the day for the execution of the death sentence. See section 8, c. 93, Laws 1927. But in this case the law having been changed, we cannot now fix the day for the execution of the sentence. There is a provision in section 10 of said chapter 69, Laws 1929, which now covers the case. This section provides that, if for any reason a judgment of death has not been executed and still remains in force, the court in which the conviction was had upon application of the district attorney shall order the defendant to be brought before it, whereupon, if no legal reason exists against the execution of the judgment, the district court shall make an order that the warden of the state penitentiary execute the judgment at a specified time, and the warden shall execute the same accordingly by electrocution.

It therefore becomes necessary to remand this cause to the district court of Grant county for order of execution of the sentence of the defendant in accordance with the provisions of said chapter 69, Laws 1929, and it is so ordered.

ON MOTION FOR REHEARING

██ Counsel for defendant has filed an extensive brief to demonstrate that the discharge of a jury before verdict without manifest necessity therefor is equivalent to an acquittal of the defendant by reason of his constitutional guaranty against being twice put in jeopardy for the same offense. This brief on this point is .entirely superfluous, as this proposition is, so far as we are advised, universally admitted; and in this case it was in the opinion admitted. But we held that where the court, under the circumstances shown by the record, had in its discretion determined that manifest necessity for the discharge of the jury before a verdict existed, we would not review such discretion in the absence of evidence in the record of the abuse of such discretion.

 Counsel for defendant has also filed an elaborate brief to demonstrate that the silence of the defendant when the jury was discharged was not equivalent to consent thereto, so as to amount to a waiving of his constitutional guaranty against double jeopardy. It may be admitted, perhaps, that in the greater number of jurisdictions it is held that mere silence on the part of the defendant when the jury is discharged is not the equivalent of express or implied consent thereto; but we consider the doctrine announced in Territory v. Donahue, 16 N. M. 17, as a great advance in the administration of justice and one well calculated to promote the proper conduct of criminal prosecutions. It simply requires of the defendant that he treat the court with the same fairness and candor that he demands of the court. The mere fact that a man is on trial for crime does not relieve him of the duty to the court to make known his objections to error about to be committed which may result in injury to him. Of course, in one sense, the action of a court in erroneously discharging a jury and declaring a mistrial, results, ultimately in a benefit to the defendant, in that it amounts to an exemption from further prosecution. But the immediate wrong to the defendant consists in the discharging of a jury from whom he has reason to believe he may obtain a verdict of acquittal. If he has reason to so believe, and really wants the jury to further consider his case, it

is certainly his duty to make his desires known to the court, and, failing so to do, he waives his objections to the action taken. In this connection we feel that it would be well for district judges, before discharging a jury for failure to agree upon a verdict, to call upon the defendant for his consent or objections to the proposed action, thus stopping before it starts all controversy as to violation of his constitutional rights in regard to second jeopardy. Of course, the court may, over the objection of the defendant, discharge the jury and declare a mistrial when, under all the circumstances, the court in its discretion deems it an impossibility for the jury to agree.

Counsel for defendant merely mentions the question of the admissibility of the defendant's confession and simply refers to his former brief on the subject. We do not deem it necessary or advisable to re-examine this question, being satisfied with the disposition made of it in our former opinion.

It follows that the motion for rehearing by defendant should be denied, and the former opinion adhered to, and it is so ordered.

BICKLEY, C. J., and WATSON, J., concur.

CATRON and SIMMS, JJ., did not participate.