718 P.2d 705

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Dennis E. TINDLE, Defendant-Appellee.**

No. 8632.

Court of Appeals of New Mexico.

April 8, 1986.

**196**

Paul G. Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, David Stafford, Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

BIVINS, Judge.

From an order suppressing defendant's confession, the state appeals. NMSA 1978, § 39–3–3(B)(2). The sole question on appeal is whether the confession was voluntary.

The state charged defendant and his brother with the October 16, 1984, first-degree murder and armed robbery of Ross Carruthers. Defendant moved to suppress his confession. A hearing on the motion was held March 12, 1985.

At the hearing, defendant and Sergeant Mallory of the Lea County sheriff's office testified. The following evidence was presented. On October 17, 1984, defendant's sister-in-law informed the Lea County sheriff's office of Ross Carruthers' murder. The sister-in-law was an eyewitness to the murder, and she implicated defendant and her husband in the murder. Sergeant Mallory contacted the Lovington branch of the sheriff's office and instructed the Lovington officers to go to the residence of defendant and his brother, and to request the brothers to accompany the officers to the sheriff's office for questioning.

When the officers arrived at defendant's residence, they asked him whether he owned a shotgun. Defendant replied affirmatively and showed the shotgun to the officers. Defendant then voluntarily accompanied the officers to the sheriff's office. Upon arrival at the sheriff's office, the officers advised defendant of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

While awaiting questioning, defendant saw his sister-in-law enter the sheriff's office. Approximately thirty to thirty-five minutes later, Sergeant Mallory and Officer Courtney began to question defendant. They gave defendant a sheet containing an enumeration of his *Miranda* rights, and defendant followed the enumeration while Sergeant Mallory read to him his rights. Defendant informed the officers that he understood his rights and that he wished to talk to the officers. He then signed the waiver portion of the form. Thus, no questions arose concerning the giving of *Miranda* rights or defendant's knowing, intelligent and voluntary waiver of his *Miranda* rights.

Rather, the issue before us concerns whether defendant's confession was extracted by fear, coercion, hope of reward or other improper inducement. *State v. Turnbow*, 67 N.M. 241, 354 P.2d 533 (1960). If so, the confession was untrustworthy and involuntary as a matter of law.

In *Territory v. Emilio*, 14 N.M. 147, 89 P. 239 (1907), the supreme court acknowledged two fundamental principles upon

which confessions are excluded. The first involves confessions induced by threats, hope, or fear. Courts suppress such confessions because "the temptation to speak falsely is so great as to render the statement entirely untrustworthy." *Id.* at 156, 89 P. at 241 (citation omitted). The second principle of exclusion, according to the court in *Emilio*, is the fifth amendment to the United States Constitution. Especially relevant is that portion of the amendment which provides that no person "shall * * * be compelled in any criminal case to be a witness against himself * * *." U.S. Const. amend. V.

The court, in *Emilio*, stated that these two principles of exclusion are disparate in character and effect. Under the first principle, courts seek to exclude confessions which are most likely false and, thus, untrustworthy. Under the second principle of exclusion, courts seek to exclude confessions which are most likely true. *Territory v. Emilio.*

Under current law, the *Miranda* warnings are designed to protect an accused's fifth amendment right against self-incrimination. *Miranda v. Arizona.* Our concern here, however, is with the first principle of exclusion: whether Sergeant Mallory's claimed promise of leniency induced defendant to confess. If so, defendant's confession must be excluded on the basis of its involuntariness and lack of trustworthiness. In so determining, we review the testimony offered at the suppression hearing.

**Defendant's Testimony**

Defendant testified that after he agreed to talk to the officers, Sergeant Mallory asked him whether he knew the victim and whether he shot the victim. Defendant replied "no." Defendant said that Sergeant Mallory then told him that he had an eyewitness who had seen defendant shoot the victim. Defendant testified that he again denied committing the offenses.

According to defendant's testimony, Sergeant Mallory told him that:

[I]f I had knowledge of it, it would be better to tell him and that he would get up on the stand, him and Courtney would testify that I cooperated with them, and it was my first time to ever be arrested, but if I didn't go ahead and admit to it, and they had to find out later the hard way, he would hang my ass.

Defendant testified that he understood Sergeant Mallory to mean that, if defendant confessed, "the judge would go more lenient with me and would not give me as many years if I cooperated." Defendant also testified that Sergeant Mallory led him to believe that if he "kept denying it and they had to find out the hard way, they would give me the most time that they possibly could." Again, Sergeant Mallory informed defendant of the eyewitness. Defendant then admitted killing the victim.

According to defendant, after he made his admission, Sergeant Mallory said that he would not take any further statement from defendant until the assistant district attorney could be summoned. When the assistant district attorney arrived, fifteen to thirty minutes later, he told defendant that he could not make any promises. Defendant testified that he knew the assistant district attorney occupied a supervisory position, but he was not certain of the precise nature of the position. Defendant then gave the tape-recorded confession which was the subject matter of the suppression hearing.

Defendant, however, admitted at the suppression hearing that Sergeant Mallory and the assistant district attorney told him that they could make no promises. He also testified that he was not told of the specific type of leniency he would receive if he confessed.

**Sergeant Mallory's Testimony**

Sergeant Mallory testified that he told defendant he was investigating a homicide, read defendant his rights, and advised defendant that there was an eyewitness to the crime. On cross-examination, the officer remembered that defendant had denied any involvement in the crime.

Sergeant Mallory also testified that he could not remember why defendant

changed his mind about confessing. He also said that he did not believe he had said he would "hang [defendant's] ass." The officer did admit, however, that he "may have told" defendant that "it would go harder on him" if defendant did not confess. Sergeant Mallory admitted, in testimony, that he told defendant "it would be better" if defendant confessed.

According to the officer's testimony, the questioning lasted ten to fifteen minutes. He testified that he told defendant he could not make any promises of leniency and that any deals would have to come out of the district attorney's office. According to Sergeant Mallory, defendant did not request any special consideration.

## Discussion

Issues which concern the voluntariness of a confession require this court to carefully scrutinize the trial court's ruling in order to determine whether substantial evidence supports the ruling and whether the trial court correctly applied the law. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.), *rev'd on other grounds*, 100 N.M. 470, 672 P.2d 643 (1983). The resolution of matters of factual conflict, credibility, and weight of the evidence is particularly within the province of the trial court. *Id.* We are not bound, however, by a trial court's ruling which is predicated on an erroneous application of the law. *Id.*

The uncertainty surrounding what standard of law was applied by the trial court provides the problem before us. The order simply granted defendant's motion to suppress without stating the basis. The state contends that the court obviously ruled that defendant's confession was involuntary as a matter of law based on evidence presented that Sergeant Mallory may have made a promise of leniency to defendant. *See Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Such an application of the law is erroneous, according to the state. Rather, the state argues that the determination of voluntariness must be based on an analysis of the totality of the circumstances. *State v. Aguirre*, 91 N.M. 672, 579 P.2d 798 (Ct.App.1978). Defendant counters that the record does not support the state's argument. Defendant notes that defense counsel cited, in argument to the court, cases applying the totality of the circumstances test and that, in its suppression order, the court did not specify which legal standard it had applied.

Because we cannot determine from the record what standard of law was applied and because our case law concerning the determination of voluntariness is somewhat confusing, we outline below the proper standard. We also remand the case to the trial court for it to determine whether its ruling comported with the standard we announce today.

In New Mexico, we adhere to the "Massachusetts rule" in admitting confessions into evidence. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *State v. Burk*, 82 N.M. 466, 483 P.2d 940 (Ct.App.1971). According to that rule, in order to introduce a confession into evidence, the state must make a prima facie showing of voluntariness. *State v. Turnbow.* The state makes such a showing by establishing that the confession was not extracted by fear, coercion, hope of reward or any other improper inducement. *Id.* If the state fails to prove voluntariness by a preponderance of the evidence, the trial court must rule that the confession was involuntary as a matter of law. *State v. Austin*, 91 N.M. 586, 577 P.2d 894 (Ct.App.1978); *State v. Watson*, 82 N.M. 769, 487 P.2d 197 (Ct.App.1971).

If, however, the court finds, by a preponderance of the evidence, that the confession was voluntary, the question of voluntariness goes to the jury. *State v. Burk.* Before the jury may consider the confession for any purpose, it must determine that the confession was voluntarily given. NMSA 1978, UJI Crim. 40.40 (Repl.Pamp. 1982). In so doing, the jury must consider whether the confession "was freely made and not induced by promise or threat." *Id.*

The precise question before us, however, is what effect does a promise of leniency have on the trial court's initial determina-

tion of voluntariness. New Mexico cases seem to divide promises into four categories: express promises, implied promises, collateral promises and adjurations to tell the truth.

### 1. Express Promises

In *State v. Dena*, 28 N.M. 479, 214 P. 583 (1923), the supreme court ruled that confessions may not be introduced into evidence "when influenced, however slight, by direct or implied promises made by any person in authority." *Id.* at 482, 214 P. at 584. The court reasoned that when promises are made, the precise force of the influence cannot be measured. The court cannot gauge to what extent the accused considered the promise and to what extent the promise affected his decision to confess. *Id.*

Subsequent to the decision, in *State v. Dena*, however, the standard was relaxed. Evidence of express promises of leniency still renders a confession involuntary as a matter of law. *State v. Lindemuth*, 56 N.M. 257, 243 P.2d 325 (1952); *State v. Wickman*, 39 N.M. 198, 43 P.2d 933 (1935). On the other hand, evidence of an implied promise of leniency now, by a person in authority, will not automatically trigger a ruling of involuntariness as a matter of law. *State v. Lindemuth; State v. Wickman.*

### 2. Implied Promises

In *State v. Wickman*, the court acknowledged that if the evidence of a promise of leniency is uncontradicted, the confession is clearly inadmissible. The court held, however, that the same strict standard is inappropriate in the case of an implied or indirect promise. In those cases, the facts are highly important. The court, therefore, concluded that "[w]e consider it too much to say that the judge must imply a promise where none was probably intended, perceived, or relied upon." 39 N.M. at 204, 43 P.2d at 937. Accordingly, the court considered the totality of the circumstances in order to determine the voluntariness of the confession.

The court, in *State v. Lindemuth*, applied a similar standard of reasoning. The court held that where "there is no direct promise and one must be inferred, if at all, from conflicting evidence," the ultimate determination of voluntariness is a matter for the jury. 56 N.M. at 266–67, 243 P.2d at 331.

Thus, if there is uncontradicted evidence of an express promise of leniency, the state has not met its burden. The confession then is involuntary as a matter of law. *State v. Watson.* If, however, the promise of leniency must be implied from the evidence or if the evidence is contradictory as to the issuance of a promise of leniency, the state can make a prima facie showing of voluntariness, and the court can find voluntariness by a preponderance of the evidence. *State v. Lindemuth.* The question of voluntariness then becomes one uniquely suited, under proper instruction, for the jury. *Id.; but see State v. Foster*, 25 N.M. 361, 183 P. 397 (1919) (expressing doubt as to jurors' ability to consider objectively voluntariness of confession).

There are two instances, however, when even an express, uncontradicted promise of leniency will not render a confession involuntary as a matter of law. These two instances involve collateral promises and adjurations to tell the truth.

### 3. Collateral Benefit Promises

The collateral benefit rule concerns promises not to prosecute other unrelated crimes. *State v. Aguirre.* "[P]romises of collateral benefit or boon not relating to immunity from the consequences of the crime are not, ex proprio vigore, sufficient to render the confession inadmissible as involuntary * * *." *State v. Woo Dak San*, 35 N.M. 105, 111, 290 P. 322, 325 (1930). Rather, the judge must determine whether, under the totality of the circumstances, the undue influence caused an innocent person to confess falsely. *Id.* If the state meets its burden of showing voluntariness by a preponderance of the evidence, the issue of voluntariness goes to the jury.

### 4. Adjurations to Tell the Truth

■ Adjurations to tell the truth do not provide the basis for a ruling that, as a matter of law, the confession was involuntary. *State v. Wickman.* Rather, similar to promises of collateral benefit, an adjuration to tell the truth is but one factor for the court to consider in determining whether the accused's will was overborne. *State v. Aguirre.*

### Conclusion

To summarize, in order to determine the voluntariness of a confession, the state must make a prima facie showing of voluntariness. *State v. Watson.* The court must then find, by a preponderance of the evidence, that the confession was voluntary. *State v. Austin.* If the court makes the preliminary finding of voluntariness, the ultimate determination of voluntariness becomes a question for the jury. *State v. Burk.* If the state fails to prove voluntariness by a preponderance of the evidence, the confession is involuntary as a matter of law. *Id.*

Uncontroverted evidence of an express promise of leniency will render a confession involuntary as a matter of law. *State v. Wickman; State v. Dena.* When the question of voluntariness, however, involves implied promises, collateral benefit promises or adjurations to tell the truth, the promise is but one factor in the court's determination of whether the state met its burden of proving voluntariness by a preponderance of the evidence.

■ In light of the thin proof here to support a finding of involuntariness, it appears that the trial court may have erroneously applied the law. Sergeant Mallory's statement clearly did not constitute an express promise of leniency. At best, it represented either an implied promise or an adjuration to tell the truth. We also note that defendant testified that Sergeant Mallory and the assistant district attorney told him that they could make no promises.

Therefore, we remand this case to the trial court. On remand, the court should determine whether its decision granting defendant's motion comports with the analysis we have outlined here.

IT IS SO ORDERED.

DONNELLY and GARCIA, JJ., concur.