802 P.2d 23

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Albert L. MUNOZ, Defendant–Appellant.**

No. 11825.

Court of Appeals of New Mexico.

Sept. 25, 1990.

Certiorari Denied Dec. 4, 1990.

Hal Stratton, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Amme M. Hogan, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

BIVINS, Chief Judge.

Defendant appeals his convictions for burglary and conspiracy, entered after he

pled guilty to those crimes. Defendant reserved the right to appeal the trial court's denial of his motion to suppress evidence obtained as a result of an alleged illegal search. Specifically, defendant raises the following issues on appeal: (1) whether the trial court erred in not suppressing the evidence obtained at the residence where defendant was arrested because the individual consenting to the search had no authority to do so, and, if there was authority, whether the consent was coerced; and (2) whether the trial court erred in refusing to suppress defendant's statements and confession to police because they were involuntary. Defendant attempted to raise a third issue, which we do not address for the reasons stated at the conclusion of this opinion. We affirm.

## FACTS

On March 4, 1989, Officer Stowe of the Carlsbad Police Department responded to a call about a residential burglary that had just occurred at 411 South Elm in Carlsbad. Based on information from witnesses at the scene of the burglary, Officer Stowe then proceeded to 1006½ West Bronson. The information gained was that persons leaving the burglary scene with items of property in their possession had entered the address on West Bronson.

When Officer Stowe arrived at 1006½ West Bronson, a Ms. Duran informed him that she was the resident. Officer Stowe advised Ms. Duran that he was investigating a residential burglary that had just occurred and that subjects had been seen carrying items into her house. That residence was, in fact, a duplex with a common interior door shared by the two parts of the duplex. Ms. Duran told Officer Stowe that, to her knowledge, no one had come into her house. Officer Stowe then asked permission to enter the residence. Ms. Duran refused, stating that there was no one there, there was nothing in her residence, and she had been hassled in the past by the police. Surveillance was then established on the duplex until a search warrant could be obtained.

Subsequently, Ms. Duran came out and contacted Officers Jones and Stowe, telling them that they could now enter the house. She explained that she had talked to her father and that he told her to allow the officers to go into the duplex and retrieve a television and microwave oven. Ms. Duran signed a consent to search form (although the form was not introduced into evidence, the officers testified about it) and again told the officers that there was no one in the duplex other than her children. Ms. Duran told the officers she did not know who had brought the items into her house but that they had left. She also stated she was afraid of reprisals and therefore did not want to give the officers any names.

After Ms. Duran signed the consent form, the officers entered the duplex and found numerous items from the burglary. During the search, the officers found that a recent entry had been made into the attic of the duplex. Upon entering the attic, the officers found other stolen items from the burglary and also discovered defendant and another individual hiding there. Defendant and his companion were arrested and given *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Other facts material to the issues raised will be discussed later.

### 1. *Authority to Consent to Search*

A search and seizure conducted without a warrant is unreasonable unless it falls within certain limited exceptions. *United States v. Lopez–Diaz*, 630 F.2d 661 (9th Cir.1980); *State v. Crenshaw*, 105 N.M. 329, 732 P.2d 431 (Ct.App.1986). Evidence obtained pursuant to an unlawful search and seizure must be excluded. *See State v. Crenshaw*. One exception to the requirement for a warrant is a consent search. *United States v. Lopez–Diaz*.

Defendant argues that he subleased the adjoining duplex from Ms. Duran. Thus, he claims a privacy interest in the residence and that only he could consent to a search. An individual aggrieved by an illegal search only through the introduction of evidence secured by a search of a third person's premises or property has not suffered an infringement of his fourth amendment rights. *State v. Hensel*, 106 N.M. 8,

738 P.2d 126 (Ct.App.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987). "A defendant may claim the benefits of the exclusionary rule only if he demonstrates a violation of his fourth amendment rights." *Id.* 106 N.M. at 9, 738 P.2d at 127. Thus, the inquiry in the present case focuses on whether defendant had a legitimate expectation of privacy in the duplex where he was arrested. Defendant's claimed expectation of privacy turns on whether he possessed authority over the property, in this case as sublessee of the duplex.

On appeal, a trial court's denial of a motion to suppress will not be disturbed if supported by substantial evidence, unless it also appears that the determination of the court was erroneously premised. *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). The appropriate standard of review on appeal is whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party. *Id.* All reasonable inferences in support of the court's decision will be indulged, and all inferences or evidence to the contrary will be disregarded. *Id.*

The trial court, following a hearing on defendant's motion to dismiss, found that defendant had no reasonable expectation of privacy in the duplex, and therefore had no standing to challenge the search. Substantial evidence supports this finding. There was testimony from police officers that Ms. Duran told them the side of the duplex where the evidence was found was vacant. Ms. Duran also told them that the beds in the vacant side of the duplex belonged to her children. One officer testified that he saw boys' and women's clothing in the duplex. The officer also testified that the interior door between the two sides of the duplex was open when the officers entered the dwelling, indicating that Ms. Duran actually resided, or at least used, both sides of the duplex and that defendant did not live there. Finally, upon arrest, defendant listed his home address as being in Loving, New Mexico, rather than the duplex at which he was arrested.

Defendant points to evidence that Ms. Duran testified at the hearing that she had sublet half of the duplex to defendant. The trial court was not required to believe this testimony. In fact, the trial court stated at the hearing that it believed the officers' testimony over Ms. Duran's and did not find Ms. Duran a credible witness. In the face of conflicting evidence, the trial court could believe the officers' version of events over that of Ms. Duran. *See State v. Boeglin.*

We hold that the trial court could properly find that defendant had no expectation of privacy in the premises. As a result of that holding, we need not reach the question of whether Ms. Duran's consent to the search was voluntary. Nor do we reach the question of whether the warrantless entry was valid because it was based on the consent of a third party whom the police at the time of the entry reasonably believed to possess common authority over the premises. *See Illinois v. Rodriquez,* ⸺ U.S. ⸺, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

## 2. *Voluntariness of Confession*

Defendant argues that the representations made by Sergeant Forbes that he would probably not go to jail if he cooperated with the police coerced him into confessing to the burglary. *State v. Tindle,* 104 N.M. 195, 718 P.2d 705 (Ct.App.1986) specifically outlines the analysis that is appropriate when reviewing a trial court's determination of whether a confession is induced either by express or implied promises of leniency by a person in authority.

In the present case, any promise of leniency appears to have been implied because the detective only theorized what *might* happen if defendant cooperated with officials. In instances where a defendant asserts his confession was induced by an implied promise of leniency, the state can make a prima facie showing of voluntariness, and the court may then find voluntariness by a preponderance of the evidence, looking at the totality of the circumstances. *Id.,* 104 N.M. at 199, 718 P.2d at 709. While it is true that the trial court in

the present case was concerned about the sergeant's actions and his failure to tape record the conversation with defendant, there was significant evidence presented to the trial court that would support its finding that the state had met its burden of showing defendant's statements were voluntary. Specifically, the detective did not initiate the conversation with defendant, nor was the statement the detective gave in response to defendant's question regarding jail time an unequivocal promise.

Defendant argues the present case is similar to *Aguilar v. State*, 106 N.M. 798, 751 P.2d 178 (1988). In *Aguilar*, the defendant was of low intelligence and had a history of mental illness. After he signed a waiver of *Miranda* rights, the police chief elicited a confession from him. The defendant was told that the confession would be "taken into favorable consideration by everyone concerned." *Id.*, 106 N.M. at 799, 751 P.2d at 179. The police chief stated to the defendant that his fingerprints had been discovered at the burglary site and that if he did not confess, he could be charged with other unrelated incidents of vandalism. However, no fingerprints were introduced at trial.

The supreme court determined that the confession was inadmissible because the state failed to prove by a preponderance of the evidence that the confession was freely given and not induced by promises or threats. *Id.* The court emphasized that because the defendant had below average intelligence and a history of mental illness, he could not understand the meaning of the assurances given to him by the police chief and had difficulty in distinguishing whether a deal had been made. *Id.*

The present case is distinguishable from *Aguilar*. The sergeant in the present case answered a question posed by defendant about what his chances were for going to jail. Sergeant Forbes testified he responded to defendant's question by saying that, in his experience, first offenders who cooperated were less likely to go to jail than other defendants. The record does not reveal that Sergeant Forbes offered any information or made any false statements to

defendant to elicit a confession from him. There is no evidence that defendant had any problem understanding the meaning of the detective's statements. Therefore, we reject defendant's claim that the state failed to establish a prima facie case that his confession was voluntary.

### 3. *Motion to Amend Docketing Statement*

■ Issues not raised in the docketing statement may not be raised for the first time in the brief-in-chief. *State v. Aranda*, 94 N.M. 784, 617 P.2d 173 (Ct.App.1980). However, a party may move to amend a docketing statement to add an issue if the motion is filed prior to the expiration of time for filing a memorandum in opposition in cases assigned to the summary calendar. *State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct.App.1983).

In the present case, defendant filed a timely motion to amend the docketing statement to add the issue of whether the trial court erred in failing to suppress his arrest and subsequent statements to police because the arrest and statements were fruits of an illegal search. When the case was reassigned to the general calendar, the motion was held in abeyance pending submission of the case to a panel. The parties were specifically instructed in the calendar notice to brief both the substantive issue and the issue of whether the motion to amend should be granted.

Defendant's counsel failed to brief the issue of why we should grant the motion to amend the docketing statement. Even if counsel had properly briefed the issue, we would deny defendant's motion to amend because we find the issue he seeks to raise to be so without merit as not to be viable. *See id.* We therefore deny defendant's motion to amend and do not address the issue he sought to raise.

### CONCLUSION

The judgment and sentence are affirmed.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.